**MASSACHUSETTS SCHOOL OF LAW AT ANDOVER, INC.**

v.

**AMERICAN BAR ASSOCIATION, et al.**

Civ. A. No. 93–6206.

United States District Court, E.D. Pennsylvania.

March 11, 1994.

---

Harold E. Kohn, Joanne Zack, Philadelphia, PA, Lawrence R. Velvel, Michael L. Coyne, Peter M. Malaguti, Constance L. Rudnick, Joseph E. Devlin, Andover, MA, for plaintiff.

Barbara W. Mather, L. Suzanne Forbis, Philadelphia, PA, H. Blair White, David T. Pritikin, William H. Baumgartner, Jr., David R. Stewart, Chicago, IL, for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Before me is a case involving law school accreditation and alleged violations of federal antitrust law by four organizational defendants and 22 individual defendants. Plaintiff avers in its complaint that the American Bar Association ("ABA") monopolizes the accreditation process. Defendants, plaintiff asserts, have conspired to fix the salaries of law school faculties and administrators; restrict their output; raise law school tuitions; and foreclose from legal education people in lower socio-economic classes. Twenty-one[1] of the individual defendants have filed a motion to dismiss the claims against them for lack of personal jurisdiction and improper venue. I will grant their motion.

## I. FACTS

For the purposes of the present jurisdictional motion the following allegations contained in the complaint will be accepted as true. Plaintiff, Massachusetts School of Law at Andover, Inc. ("MSL") is a non-profit corporation that operates a law school in Andover, Massachusetts. The law school opened its doors in 1988.

MSL asserts it endeavors to provide high quality, low-cost legal education to people who might otherwise be shut out of more traditional law schools. The law school prides itself on having a unique admissions procedure that encourages applicants from mid-life and from lower economic classes and on having a tuition that is currently $9,000 per year. MSL says it achieves its goals by policies and practices that it admits are in direct conflict with certain ABA accreditation criteria. MSL asserts that the ABA requires law schools to utilize the LSAT in admissions decisions, which MSL does not do. The ABA does not count adjunct faculty in computing required student-faculty ratios; MSL makes extensive use of adjunct professors, which keeps salary costs down, but does not allow MSL to reach the ABA-required ratio. The ABA criteria require a law school's library to have a certain number of hardbound volumes; MSL relies heavily on an electronic library.

MSL sought accreditation from the ABA. Such accreditation is crucial, MSL contends, because the vast majority of jurisdictions (41 states plus the District of Columbia) require that a prospective bar applicant be a graduate of an ABA-accredited law school before he or she can sit for that state's bar examination.[2] In 1993 the ABA denied MSL's application for accreditation.

MSL maintains that the ABA's accreditation criteria are anticompetitive and that the ABA has abused its monopoly power over accreditation. MSL asserts that defendants' actions have caused it to suffer competitive injury and loss of prestige. It avers that it has difficulty competing for students as a result of the ABA's denying accreditation, and it has suffered economic damage through decreased enrollments. In two counts, MSL claims that defendants have combined and conspired to organize and enforce a group boycott in restraint of trade, a violation of the Sherman Act, Section 1, and that defendants have conspired to monopolize the provision of law school training, the accreditation of law schools, and the licensing of lawyers, in violation of the Sherman Act, Section 2. 15 U.S.C. §§ 1, 2.

A variety of motions have been filed in this case. Here I will only address the motion of 21 individual defendants to dismiss the claims against them for lack of personal jurisdiction and improper venue.[3] These defendants are,

1. The 22nd individual defendant, Carl C. Monk, has filed (with the American Association of Law Schools) a separate motion to dismiss for failure to state a claim against either Monk or AALS and for lack of personal jurisdiction and improper venue as to Monk. That motion will be addressed in another opinion.

2. Massachusetts is not one of those states. MSL was accredited by the Massachusetts Board of Regents in 1990, and so its graduates can sit for the Massachusetts bar examination and, if successful, practice law in that jurisdiction.

3. The 21 individual defendants who filed this motion are: James P. White, Nina Appel, Jose R. Garcia–Pedrosa, Laura N. Gasaway, Frederick M. Hart, Rudolph C. Hasl, R.W. Nahstoll, Henry Ramsey, Jr., Norman Redlich, John E. Ryan, Gordon D. Schaber, Pauline Schneider, Steven R. Smith, Claude R. Sowle, Robert A. Stein, Rennard Strickland, Roy T. Stuckey, Leigh H.

or have been, members of various ABA committees and organizations that participate in the accreditation process. James White, for example, is the ABA's consultant on legal education and is the chief administrative officer of the council of the ABA section of legal education and admissions to the Bar. The council promotes the ABA's accreditation standards and determines whether individual law schools comply. Other individual defendants are or were on the council, the ABA's accreditation committee, or the site review team that visited MSL as part of its accreditation application process.

## II. PERSONAL JURISDICTION

■ Before this court can exercise personal jurisdiction over any of these individual defendants, there must be a constitutionally acceptable relationship between that defendant and the forum. Once a defendant challenges the exercise of personal jurisdiction, the plaintiff has the burden of proving with reasonable particularity that sufficient contacts to support jurisdiction exist between the defendant and the forum state. The plaintiff must establish a basis for either specific jurisdiction or general jurisdiction.

### A. Personal Jurisdiction Based on Individual Defendants' Contacts With Pennsylvania

Federal Rule of Civil Procedure 4 allows a federal district court to exercise personal jurisdiction over out-of-state defendants to the extent allowed by the law of the state where the court is located. Pennsylvania has two statutes that confer jurisdiction over persons. 42 Pa.Cons.Stat.Ann. §§ 5301, 5322. *General* jurisdiction over an individual defendant is based on the individual's presence or domicile in Pennsylvania when served or on the individual's consent to jurisdiction. 42 Pa.Cons.Stat.Ann. § 5301(a)(1) (Purdon 1993). *Specific* jurisdiction over a person is based on the cause of action arising from the person's activities and contacts in Pennsylvania. 42 Pa.Cons.Stat.Ann. § 5322(a) (Purdon 1993).

Taylor, Frank K. Walwer, Sharp Whitmore, and Peter A. Winograd.

■ Each of the individual defendants has stated in an affidavit that he or she was served outside of Pennsylvania, is not a resident[4] of Pennsylvania, and has not consented to the exercise of personal jurisdiction by courts in Pennsylvania. (Def.Mot., exh. A–U). Plaintiff has not offered evidence to the contrary. Therefore, I find that there is no basis for the exercise of general personal jurisdiction over the 21 individual defendants.

■ Moreover, I find that plaintiff has not shown that I may exercise specific personal jurisdiction over these defendants. The exercise of personal jurisdiction over a defendant must be consistent with due process. Pennsylvania provides for jurisdiction to the fullest extent allowed by the United States Constitution and to be based on the most minimum contact with Pennsylvania allowed by the United States Constitution. 42 Pa.Cons.Stat.Ann. § 5322(b). With regard to specific jurisdiction, due process is satisfied when a cause of action is related to or arises out of the defendant's purposeful contacts with the forum state so that the defendant could reasonably expect to be haled into court in that forum. *See Provident Nat'l Bank v. California Fed. Sav. and Loan,* 819 F.2d 434, 437 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

■ It is not enough to warrant the exercise of personal jurisdiction that a defendant is being sued in a forum where he or she had some contact. Rather, a court must examine the relationship among the defendant, the forum, and the litigation. *Regency Oldsmobile, Inc. v. General Motors Corp.,* 685 F.Supp. 91, 94 (D.N.J.1988). A case from the Eighth Circuit is particularly instructive. In *Health Care Equalization Committee,* plaintiff, a chiropractic society, alleged antitrust violations by (among other defendants) the American College of Radiology. *Health Care Equal. Comm. v. Iowa Medical Soc'y,* 851 F.2d 1020, 1022 (8th Cir.1988). Plaintiff's allegations against the ACR focused on

---

4. For the purpose of considering general personal jurisdiction I will consider "residence" the equivalent of "domicile."

the ACR's adoption of a code of ethics that prohibited professional association with chiropractors. *Id.* at 1030. The district court granted the ACR's motion to dismiss for lack of personal jurisdiction. *Id.* at 1022. In affirming the dismissal, the Eighth Circuit examined the relationship between the ACR's contacts with the forum state and the alleged cause of action against ACR. *Id.* at 1030. The ACR's contacts with the forum were limited to the less than one percent of ACR members who lived there and the mailings sent to those members. *Id.* In holding that there were insufficient contacts with the forum to warrant jurisdiction over the ACR, the Eighth Circuit said that the plaintiff had drawn no direct connection between the ACR's adoption of its code of ethics and its limited contact with the forum. *Id.*

In another case, a private educational institution alleged that two professional organizations and 25 individual defendants had conspired to limit the number of practicing orthodontists in violation of the antitrust laws. *United States Dental Inst. v. American Ass'n of Orthodontists,* 396 F.Supp. 565, 569 (N.D.Ill.1975). The complaint averred that the individual defendants furthered the conspiracy by adopting certain guidelines and acting to prevent the plaintiff from gaining state approval. *Id.* at 571. Nine of the individual defendants moved to dismiss for lack of personal jurisdiction. *Id.* at 569. The district court found that three of the individual defendants had been at a meeting in the forum state at which the allegedly exclusionary guidelines were adopted and had been on the council that voted to approve the guidelines. *Id.* at 571. The court found that the plaintiff's cause of action, which arose from the exclusionary guidelines, was directly traceable to the meeting in the state at which they were adopted. *Id.* Therefore, the court held, the activities of the three voting defendants supported the exercise of personal jurisdiction. *Id.*

Here, the cause of action arises from the ABA's denial of accreditation to MSL. The ABA criteria in question were applied by an accreditation team that inspected MSL's campus and facilities in Massachusetts. The MSL faculty and students who suffer from the school's loss of prestige are in Massachusetts. The economic harms are felt by MSL in Massachusetts. The decreased enrollment is experienced in MSL's classrooms in Massachusetts.

MSL has the burden of establishing that its cause of action arose from the individual defendants' contacts with Pennsylvania. *Provident Nat'l Bank,* 819 F.2d at 437. MSL has not done so. It has not alleged with "reasonable particularity" the individual defendants' contacts with Pennsylvania, much less any contacts with Pennsylvania that injured MSL. Both the complaint and plaintiff's memorandum in opposition to the individual defendants' motion assert that the four organizational defendants have contacts with Pennsylvania.[5] With regard to the individual defendants, however, plaintiff does not allege with particularity any contacts they have with Pennsylvania that gave rise to MSL's claims.[6] Each individual defendant has stated in an affidavit that he or she did not take any action concerning MSL while in Pennsylvania and did not discuss MSL accreditation during any telephone conversation or correspondence with a person in Pennsylvania. (Def.Mot., exh. A–U). MSL has not countered these affidavits with any evidence to the contrary. Instead, plaintiff merely states that the individual defendants "must have" engaged in accreditation activities in Pennsylvania, "must have" inspected law schools in Pennsylvania, and "must have" received reports written in Pennsylvania. Even if MSL were able to support its allegations of what the individual defendants "must have" done in Pennsylvania, it still cannot do what the plaintiff in *United States Dental Institute* was able to do: directly connect the

---

5. For example, the ABA is a partner in ALI/ABA, a provider of continuing legal education located in Philadelphia. The Law School Admission Services, Inc. and Law School Admission Council are located in Newtown, Pennsylvania. The American Association of Law Schools has member law schools in Pennsylvania.

6. The complaint alleges that James White "transacts business in the Eastern District of Pennsylvania" but is no more specific than that.

cause of action to the individual defendants' activities in the forum state. 396 F.Supp. at 571.

MSL has not alleged, much less established, *any* contacts the 21 individual defendants had with Pennsylvania. More importantly, even if MSL were able to support its supposition that the individual defendants "must have" engaged in accreditation activities in Pennsylvania regarding Pennsylvania schools, MSL has not suggested how these activities had anything to do with MSL's failure to obtain accreditation in Massachusetts. There are not a limited number of accreditations to go around, so that bestowal of accreditation on a Pennsylvania law school lowers MSL's prospect of being accredited. All this leads to my conclusion that the individual defendants do not have sufficient contacts with Pennsylvania to permit the exercise of specific personal jurisdiction over them.

B. Personal Jurisdiction Based on Co-Conspirators' Contacts With Pennsylvania

■ In addition to arguing that the individual defendants must have had sufficient contacts with Pennsylvania on other accreditation matters to warrant jurisdiction arising out of MSL's accreditation, plaintiff urges me to exercise personal jurisdiction over the 21 individual defendants based on the contacts of their alleged co-conspirators. MSL's theory of co-conspirator jurisdiction is that because the court has personal jurisdiction over four organizational defendants, and because all of the defendants are alleged to have conspired with each other, the court has personal jurisdiction over all of the defendants.[7] I conclude the co-conspirator jurisdictional theory is not applicable in this case because plaintiff has not alleged substantial acts (or any acts at all, for that matter) in Pennsylvania in furtherance of the conspiracy.

■ Co-conspirator jurisdiction is not a separate basis of jurisdiction apart from general or specific jurisdiction. Rather, it is based on the same contacts-with-the-forum analysis just discussed. The difference is that a court looks not only at the defendant's forum contacts, but at those of the defendant's "resident" co-conspirators. The court imputes the contacts of the "resident" co-conspirator over whom it has jurisdiction to the "foreign" co-conspirator to see if there are sufficient contacts to exercise jurisdiction over the latter. *See Ethanol Partners v. Wiener, Zuckerbrot, Weiss & Brecher*, 635 F.Supp. 15, 18 (E.D.Pa.1985); *In re Arthur Treacher's Franchisee Litig.*, 92 F.R.D. 398, 411 (E.D.Pa.1981).

■ The four organizational defendants in this case do not dispute that there is personal jurisdiction over them in this forum.[8] Plaintiff's alleging that the individual defendants conspired with the organizational defendants is not enough to permit an exercise of jurisdiction over the 21 individuals who contest it. Merely belonging to a civil conspiracy does not make a member subject to the jurisdiction of every other member's forum. *In re Arthur Treacher's*, 92 F.R.D. at 411. Rather, there must also be substantial acts in

---

**7.** I have serious reservations about whether the individual defendants, alleged to be on various ABA committees or carrying out the ABA's work in accrediting law schools, can conspire with the ABA. Section one of the Sherman Act applies only to concerted action, proof of which requires evidence of a relationship between at least two legally distinct persons or entities. *Oksanen v. Page Memorial Hosp.*, 945 F.2d 696, 702 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 973, 117 L.Ed.2d 137 (1992). It seems doubtful that the individual defendants are acting as distinct entities apart from the ABA during an accreditation review. *See id.* (medical staff indistinct from hospital during peer review process). This opinion does not address that issue; I merely note that plaintiff's complaint, which alleged *all* defendants conspired with each other, may

thus allege concerted activity which is legally impossible.

**8.** The Clayton Act authorizes that an antitrust suit against a corporation can be brought in the judicial district where it is an inhabitant and also in any district where the corporation is found or transacts business. 15 U.S.C. § 22. This provision for nationwide service of process means that a federal district court's jurisdiction is coextensive with the boundaries of the United States. *American Trade Partners v. A–1 Int'l Importing Enter., Inc.*, 755 F.Supp. 1292, 1302 (E.D.Pa. 1990). This Clayton Act provision applies only to corporate, not individual, antitrust defendants. *Delong Equip. Co. v. Washington Mills Abrasive*, 840 F.2d 843, 848 (11th Cir.1988).

furtherance of the conspiracy within the forum, of which the out-of-state co-conspirator was or should have been aware. *Id.*

MSL has not alleged in its complaint substantial acts in Pennsylvania by anyone that furthered the conspiracy and certainly nothing of which the out-of-state individual defendants would have been a part. MSL has said in its memorandum, for example, that James White communicates with all ABA-accredited law schools, including those in Pennsylvania; selects site inspection team members that visit schools in Pennsylvania; and meets with LSAC/LSAS officials. MSL has not said how these acts furthered the conspiracy that injured MSL. MSL has also stated in its memorandum (not its complaint) that phone calls, letters, reports and meetings "must have been" held in Pennsylvania. Again, plaintiff has not shown how these acts, even if proved to be more than conjecture, are substantial acts that furthered the conspiracy which injured MSL.

To be sure, MSL has alleged that the *effects* of the conspiracy were felt nationwide and therefore by law schools in Pennsylvania, but this is not the same as alleging that substantial acts to further the conspiracy took place in Pennsylvania. Therefore, I find that the individual defendants are not subject to the exercise of personal jurisdiction in Pennsylvania on the basis of co-conspirator jurisdiction.

### III. CONCLUSION

For the reasons stated above, I hold that there is no basis to support the exercise of general personal jurisdiction over 21 of the individual defendants. Similarly, I hold that those individual defendants do not have sufficient contacts with the forum—either through their own acts or through co-conspirators' contacts—giving rise to MSL's cause of action that would support the exercise of specific personal jurisdiction. Having decided the individual defendants' motion on the basis of personal jurisdiction, I make no decision on their venue arguments. Plaintiff's claims against the individual defendants must be dismissed for lack of personal jurisdiction. An appropriate order follows.

### ORDER

And now, this 11th day of March, 1994, the motion of defendants James P. White, Nina Appel, Jose R. Garcia–Pedrosa, Laura N. Gasaway, Frederick M. Hart, Rudolph C. Hasl, R.W. Nahstoll, Henry Ramsey, Jr., Norman Redlich, John E. Ryan, Gordon D. Schaber, Pauline Schneider, Steven R. Smith, Claude R. Sowle, Robert A. Stein, Rennard Strickland, Roy T. Stuckey, Leigh H. Taylor, Frank K. Walwer, Sharp Whitmore, and Peter A. Winograd to dismiss the claims against them for lack of personal jurisdiction is hereby GRANTED.