**MASSACHUSETTS SCHOOL OF LAW AT ANDOVER, INC.**

v.

**AMERICAN BAR ASSOCIATION, et al.**

Civ. A. No. 93–6206.

United States District Court, E.D. Pennsylvania.

May 31, 1994.

844

Harold E. Kohn, Joanne Zack, Kohn, Nast & Graf, P.C., Philadelphia, PA, Lawrence R. Velvel, Michael L. Coyne, Peter M. Malaguti, Constance L. Rudnick, Andover, MA, for plaintiff.

Barbara W. Mather, L. Suzanne Forbis, Pepper, Hamilton & Scheetz, Philadelphia, PA, H. Blair White, David T. Pritikin, William H. Baumgartner, Jr., Sidley & Austin, Chicago, IL, for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

This case involves law school accreditation and alleged violations of federal antitrust law.[1] Plaintiff, the Massachusetts School of Law ("MSL"), alleges in its complaint that four organizational defendants[2] and 22 individual defendants[3] conspired to fix the salaries of law school faculties and administrators, restrict professors' output, raise law school tuitions, and foreclose from legal education people in lower socio-economic classes. Twenty-one of the 22 individual defendants filed a collective motion to dismiss the claims against them for lack of personal jurisdiction. The 22nd individual defendant, Carl C. Monk, filed a separate motion to dismiss.

I granted the 21 individual defendants' motion, holding there was no basis for the exercise of general or specific personal jurisdiction over the individual defendants. *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 846 F.Supp. 374, 380 (E.D.Pa.1994). None of the individuals is a resident or citizen of Pennsylvania, had been served in Pennsylvania, or consented to the exercise of personal jurisdiction by courts in

---

1. For a more detailed recitation of the facts and plaintiff's allegations, see *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 846 F.Supp. 374, 376–77 (E.D.Pa.1994).

2. The organizational defendants are the American Bar Association, the American Association of Law Schools, Law School Admission Services, Inc., and the Law School Admission Council.

3. The 22 individual defendants are: James P. White, Nina Appel, Jose R. Garcia–Pedrosa, Laura N. Gasaway, Frederick M. Hart, Rudolph C. Hasl, Carl C. Monk, R.W. Nahstoll, Henry Ramsey, Jr., Norman Redlich, John E. Ryan, Gordon D. Schaber, Pauline Schneider, Steven R. Smith, Claude R. Sowle, Robert A. Stein, Rennard Strickland, Roy T. Stuckey, Leigh H. Taylor, Frank K. Walwer, Sharp Whitmore, and Peter A. Winograd.

Pennsylvania. Further, because plaintiff had not alleged with particularity any contacts the individual defendants had with Pennsylvania that gave rise to plaintiff's cause of action, I held that plaintiff had not met its burden of establishing that its cause of action arose out of the individual defendants' contacts with Pennsylvania. Finally, I held that the theory of co-conspirator jurisdiction was inapplicable in this instance because plaintiff had not alleged substantial acts in Pennsylvania in furtherance of the conspiracy.

■ Plaintiff timely filed a motion for reconsideration, asserting that it now has evidence of co-conspirators' contacts with Pennsylvania and wants the chance to discover more. Such contacts, plaintiff argues, permit the exercise of personal jurisdiction over the individual defendants. In a subsequent filing, plaintiff made clear it was not challenging accreditation in general, but only the use of certain criteria that are reflected in various ABA accreditation standards.[4] To support its motion for reconsideration of the order of dismissal, MSL submits several documents that MSL says show that some accreditation-related activities took place in Philadelphia. Exhibits C and D indicate that an ABA workshop for law school deans took place in Philadelphia in 1988, although I note that the workshop does not appear to have been solely, or even mostly, focused on accreditation.[5] Similarly, plaintiff's reply memorandum in support of its motion for reconsideration shows that in 1988 and 1992, the LSAC's Board of Trustees, which included some of the individual defendants, met in Pennsylvania. The minutes of the meeting show that the board discussed cooperation with the AALS and ABA on certain issues.

There is no reference to any consideration of the specific standards that MSL contends violate the antitrust laws.

Other documents submitted by MSL do not support its contention that activities in furtherance of the alleged conspiracy took place in Pennsylvania. For example, MSL submits numerous letters from law school deans who, in 1987, expressed concern or disagreement with the ABA accreditation criteria concerning student-faculty ratios. The letters were all addressed to a law school dean in San Francisco; some mention a scheduled deans' meeting in New Orleans.[6]

Similarly, MSL asserts that several of the individual defendants participated in meetings of the "Mayflower Group," which apparently includes representatives of the ABA, AALS, and LSAC. Plaintiff states that discovery "may show meetings in Philadelphia." By the same token, discovery may show meetings in Nome, Honolulu, or Timbuktu. However, the only *definite* locations of Mayflower Group meetings that can be gleaned from plaintiff's documents are Washington, D.C. (Exhibits I, J, K, L) and San Francisco (Exhibits P and R).

Despite plaintiff's urging otherwise, I do not find that the documents MSL presents suggest, much less show, substantial acts in Pennsylvania in furtherance of the conspiracy claimed to have injured MSL in its bid for, and subsequent denial of, accreditation.

■ An even more important reason for affirming the March 11 order lies in the fact that plaintiff has failed, as required by Federal Rule of Civil Procedure 8(a)(2), to provide a "short and plain statement of the claim showing pleader is entitled to relief" from the

---

4. MSL challenges six criteria that encompass several of the more than 50 ABA standards: salary levels (ABA Standard 405); student-faculty ratios, limits on teaching hours and sabbatical requirement (ABA Standards 201 and 401–405); use of the Law School Admission Test or other test (ABA Standard 503); guidelines for law libraries (ABA Standards 602, 603, and 704); prohibition of for-credit bar review courses (ABA Standard 302(b)); and limits on hours that students may be employed (ABA Standard 305).

5. In addition to a program by the accreditation committee—which may or may not have included discussion of the criteria and standards complained of—topics for panels and discussions included fund raising, lawyer competency, law school administration, and budgeting.

6. MSL's contention that the documents "show that a large number of deans present at the *Philadelphia* workshop believed the ABA's student-faculty ratio to be unrelated to quality" (emphasis added) requires a leap of faith I am unwilling to make. While some letters, dated 1988, mention the Philadelphia deans' workshop, the majority of letters are from 1987 and refer to the New Orleans workshop.

individual defendants. Plaintiff has not alleged in its complaint nor asserted in its arguments, a legal theory upon which the liability of any individual can rest. What the complaint does do is to name twenty-two persons and associate each of them with one of four organizational defendants. It asserts that "defendants have engaged in combinations, conspiracies, and agreements, and have organized and enforced a group boycott," and that they have "engaged in a conspiracy to monopolize [and] an attempt to monopolize."

The complaint can only be logically understood as asserting that the individual defendants conspired with the organizational defendants of which they are alleged to have been a part, or whose activities they are said to have carried out. Such an allegation is not a short, plain statement showing that plaintiff is entitled to relief from the individual defendants because, as a matter of law, the individual defendants cannot conspire with their own organizational defendant.[7]

█ Only legally distinct entities can conspire with one another. *Oksanen v. Page Memorial Hosp.*, 945 F.2d 696, 703 (4th Cir. 1991), *cert. denied*, — U.S. —, 112 S.Ct. 973, 117 L.Ed.2d 137 (1992); *Weiss v. York Hosp.*, 745 F.2d 786, 813 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). *Weiss*, a case involving peer-review by a medical staff empowered to make decisions about granting hospital privileges to applicant doctors, is instructive as an analogy to this, an accreditation case in which individuals are empowered by the ABA to evaluate law schools and make recommendations to the ABA about accreditation.

In *Weiss*, an osteopath was denied staff privileges at a hospital. 745 F.2d at 791. He alleged Sherman Act violations by the hospital and its medical staff, composed of doctors who have privileges at the hospital. The Third Circuit said that the hospital could not, as a matter of law, conspire with the medical staff because the latter, empowered to make decisions on behalf of the hospital, acted as corporate officers would in relation to a corporation.[8] *Id.* at 817. The medical staff had no economic interest in competition with the interests of the hospital and therefore could not conspire with it. *Id.*

As *Weiss* points out, in antitrust cases, courts look beyond legal form to the economic substance of an arrangement, which often depends upon the economic incentives of the parties. Here the individual defendants may be separate economic units competing with each other, although that is not alleged, but if the complaint ties them to anything in this case, it is to their respective organizations. In short, the complaint can only be understood to assert that in effect they acted in the way corporate officers would act in relation to a corporation.

The situation of the individual defendants *vis a vis* the organizational defendants is much the same as that of the medical staff in *Weiss*. Individual defendants who, on behalf of the ABA, assume accreditation responsibilities and undertake accreditation activities, such as visiting a law school under evaluation, are the ears and eyes of the ABA. It is not merely that their interests are consistent with those of the ABA—for that particular accreditation matter, they are the ABA.

7. If it be argued that the complaint could be interpreted to allege that the individual defendants each conspired with some or all of the others, the complaint becomes vague to the point of absurdity.

8. This analogy of the medical staff acting as corporate officers would act in relation to the corporation does not mean that personal jurisdiction over the corporation supports personal jurisdiction over the individual corporate officers. A corporate officer's or director's actions taken in his or her corporate capacity do not, by themselves, bring the officer or director personally within the jurisdiction of the court. *Simkins Corp. v. Gourmet Resources Int'l*, 601 F.Supp.

1336, 1345 (E.D.Pa.1985). *See also Amplifier Research Corp. v. Hart*, 144 B.R. 693, 696 (E.D.Pa.1992) (president of defendant corporation dismissed for lack of personal jurisdiction when plaintiff did not set forth what president did to subject himself to jurisdiction); *Donner v. Tams–Witmark Music Library, Inc.*, 480 F.Supp. 1229, 1233 (E.D.Pa.1979) (courts generally have not exercised personal jurisdiction over individuals for their acts done in a corporate capacity). It is for that reason that the documents referred to on page 3 do not establish a basis for jurisdiction over an individual defendant even though he or she may have participated in the activity in question.

James P. White, Consultant on Legal Education to the ABA, is a particularly good example. He is, according to the complaint, in charge of the accreditation process for the ABA. On accreditation matters, therefore, he is not legally distinct from the ABA and cannot, as a matter of law, conspire with it. Therefore, the ABA's contacts with Pennsylvania cannot be the basis for the exercise of co-conspirator personal jurisdiction over the individual defendants because the individual defendants cannot be co-conspirators with the ABA. Similarly, individual defendants on the board of trustees of the LSAC cannot, in their capacity as board members, conspire with the LSAC.

The Third Circuit in *Weiss,* while agreeing with the district court that the medical staff could not conspire with the hospital during the peer-review process, recognized that the individuals comprising the medical staff could conspire with each other, as they had independent economic interests in competition with one another and, presumably, with any doctor seeking privileges at the hospital. 745 F.2d at 817. Here, it may well be that the individual defendants, who have independent interests as law school professors, administrators, or practitioners, could have, as a matter of law, conspired with one another. Plaintiff, however, has not alleged which of them conspired with which others, and to do what.[9] The global allegation about combinations, conspiracies, and agreements; the organization of a group boycott; and the organization of a monopolization conspiracy, rich in jargon though it may be, is not a short and plain statement showing why the individual defendants are liable to the plaintiff for anything.

By way of further illustration: Norman Redlich is one of the individual defendants named in MSL's complaint. The complaint alleges only that "Norman Redlich was Chairman of the Council of the Section of Legal Education from 1989–1990." No doubt, he acted through that council for the ABA. And that is exactly the point: he was not legally distinct from the ABA and cannot

have conspired with it. Neither the complaint nor subsequent filings allege what Redlich, *independent of his ABA ties,* had to do with establishing, evaluating, or enforcing the accreditation criteria of which MSL complains, or that Redlich was involved in the decision not to accredit MSL. MSL has asserted that it is not attacking the virtues of accreditation as a whole, but only specific criteria alleged to be anticompetitive restraints. The only thing that can be gleaned from the complaint about Redlich is that he acted for and with the ABA. Since he cannot have conspired with the ABA, whatever is said about him is not a short and plain statement showing why MSL is entitled to relief from Redlich.

MSL's own allegations and exhibits illustrate precisely the significance of this point. MSL's motion for reconsideration includes exhibits indicating that Redlich was on a panel during the 1988 deans' workshop in Philadelphia (Exhibit D) and may have attended a Mayflower Group meeting in 1989 (Exhibit K). The deans' workshop in which Redlich participated was sponsored by the ABA; Redlich's panel addressed ABA council matters. Similarly, the document concerning the Mayflower Group is on LSAC letterhead and specifically indicates that Redlich's appearance was for, or on behalf of, the ABA: it lists to whom the meeting's agenda was sent and reads, "Norman Redlich (ABA)." While MSL may assert that the ABA, through Redlich, conspired with the LSAC, or that Redlich as an individual conspired with the LSAC, this document cannot suggest both allegations. Theoretically it is possible for Redlich to have conspired with the other defendants in his individual, not ABA, capacity. But until or unless MSL can allege with whom, and for what, Redlich—or any other individual defendant—conspired, there is no basis for the assertion of co-conspirator jurisdiction over any of them.

The rules of civil procedure are to be construed to secure the just, speedy, and inexpensive determination of every action.

9. I am aware of the Supreme Court's admonition that courts should not impose heightened pleading requirements in the absence of such requirements in the Federal Rules. *Leatherman v. Tar-rant County Narcotics Unit,* ── U.S. ──, ──, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). In this instance I am merely requiring the plaintiff to identify the alleged wrong and wrongdoer.

Fed.R.Civ.P. 1. The rule should be more than an idea or fuzzy, though noble, abstraction. If the plaintiff cannot state a claim against one or more of these individual defendants, that individual should not be subjected to the expensive and time-consuming arsenal of interrogatories, document demands, and depositions that plaintiff will understandably use in the hope of establishing a basis for personal jurisdiction. If the plaintiff can allege with whom and for what an individual conspired, it may do so. If not, that should end the matter for that defendant.

Although this court can exercise personal jurisdiction over the four organizational defendants, when form yields to economic substance, plaintiff has not alleged the legally possible conspiracy(ies) that could give rise to the exercise of co-conspirator personal jurisdiction over any of the individual defendants. Therefore, although plaintiff's motion for reconsideration of the order dismissing the 21 individual defendants for lack of personal jurisdiction has been granted, the order must be affirmed.

An appropriate order follows.

### ORDER

AND NOW, this 31st day of May, 1994, the plaintiff's motion for reconsideration is hereby granted, and the order of March 11, 1994, dismissing plaintiff's claims against 21 individual defendants is hereby affirmed.