## MASSACHUSETTS SCHOOL OF LAW AT ANDOVER, INC.

v.

## AMERICAN BAR ASSOCIATION, et al.

### Civ. A. No. 93–6206.

United States District Court, E.D. Pennsylvania.

June 20, 1994.

---

Harold E. Kohn, Joanne Zack of Kohn, Nast & Graf, P.C., Philadelphia, PA, and Lawrence R. Velvel, Michael L. Coyne, Peter M. Malaguti, and Constance L. Rudnick, Andover, MA, for plaintiff.

Robert A. Burgoyne and Jacqueline R. DePew, Washington, DC, for defendants.

## MEMORANDUM AND ORDER
DITTER, District Judge.

In this case, the failure of the American Bar Association ("ABA") to grant accreditation to a law school is challenged on antitrust grounds. Presently before me is a motion to dismiss two defendants, the American Association of Law Schools ("AALS") and Carl C. Monk. Plaintiff, the Massachusetts School of Law ("MSL"), alleges in its complaint that four organizational defendants [1] and 22 individual defendants, including Monk, through the use of anticompetitive accreditation standards, conspired to fix the salaries of law school faculties and administrators, restrict professors' output, raise law school tuitions, and foreclose from legal education people in lower socio-economic classes.[2]

The American Association of Law Schools is an association of law schools whose membership includes most ABA-accredited schools. Monk is the executive director of the AALS. Both the AALS and Monk filed a motion to dismiss on the ground of failure to

---

1. The organizational defendants are the American Bar Association, the American Association of Law Schools, Law School Admission Services, Inc., and the Law School Admission Council.

2. For a detailed recitation of the facts and plaintiff's allegations, see *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 846 F.Supp. 374, 376–77 (E.D.Pa.1994).

state a claim against them upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). Monk also filed for dismissal on the grounds of lack of personal jurisdiction and improper venue.[3]

In considering a motion to dismiss for failure to state a claim, a court accepts as true the allegations of fact in the complaint and draws all inferences from those facts in the light most favorable to the plaintiff.[4] To allege sufficiently a violation of Section 1 of the Sherman Act, MSL must allege a conspiracy in restraint of trade that has an adverse effect on competition. *See Forum Publications, Inc. v. P.T. Publishers, Inc.*, 700 F.Supp. 236, 241 (E.D.Pa.1988). To allege a conspiracy to monopolize in violation of Section 2 of the Sherman Act, MSL must allege facts constituting the conspiracy, its period and object, and what the alleged participants did to achieve the conspiracy's object. *Id.* at 243 (citation omitted); *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F.Supp. 1385, 1401 (D.Del.1984), *aff'd*, 769 F.2d 152 (3d Cir.1985).

MSL has alleged that the defendants *en masse* have conspired to enforce the ABA's anticompetitive accreditation criteria. These criteria, MSL asserts, restrain trade and adversely affect competition by keeping low-income students from studying law. For example, plaintiff alleges that the defendants conspired to require the use of the LSAT, administered by the Law School Admission Services, Inc./Law School Admission Council ("LSAS/LSAC"), and that their doing so adversely affects low-income students. Plaintiff also alleges that the ABA's monopoly on law school accreditation hurts competition because nontraditional law schools such as MSL cannot attract as many students, and

graduates of non-accredited schools are restricted from practicing law in the great majority of states.

If the complaint is read generously, MSL has alleged the period of the conspiracy by asserting that James P. White has been the ABA's consultant on accreditation matters for 20 years and has led the conspiracy. MSL has further specified the period in which the conspiracy affected MSL as beginning in the fall of 1992.

MSL has alleged that the object of the conspiracy was to maintain high salaries for law school faculty, restrict faculty output, raise tuition, and make law school education inaccessible to people in lower socio-economic classes.[5]

MSL has sufficiently alleged the acts taken by defendants to achieve these objectives. For instance, MSL alleges the ABA arbitrarily delays the accreditation process in order to force compliance with its standards and has misrepresented information to the Department of Education, which designates federally recognized accrediting agencies. MSL has also alleged the steps taken by the ABA that resulted in MSL's being denied accreditation. The complaint alleges that the AALS participates in all phases of ABA accreditation inspections, including the writing of inspection team reports. So far as Monk is concerned, the complaint alleges that he participates in enforcing ABA accreditation criteria through the AALS, of which he is executive director and for whom he "trains ABA site review team members."

I find that the complaint can be read to allege that the ABA violated the Sherman Act and that the AALS conspired with it to do so. Therefore, the AALS' motion to dis-

---

3. Twenty-one of the 22 individual defendants filed a collective motion to dismiss the claims against them for lack of personal jurisdiction. I granted that motion, *Massachusetts School of Law*, 846 F.Supp. at 380, and affirmed the dismissal on May 31, 1994.

4. The AALS and Monk have submitted an affidavit and several letters with their motion to dismiss. For purposes of the 12(b)(6) motion I have not considered these matters outside the pleadings, but rely only on plaintiff's complaint.

5. This may be one of the few cases on record involving an employers' trade association conspiring to raise wages paid to its members' employees, restrict their production, and limit sales to potential customers. When university trustees, who have to foot the bills resulting from high salaries, low output, and restricted sales, learn what has been going on under their very noses, heads may roll. In the meantime, it is reassuring to know that the schools making up the AALS do not teach economics or logic, but only law.

miss for failure to state a claim must be denied.

Finding that MSL has sufficiently alleged its cause of action against the AALS does not, of course, necessarily mean that this court can exercise jurisdiction over Monk or that plaintiff has alleged a claim against him. Plaintiff has the burden of alleging with reasonable particularity a factual basis for jurisdiction, either specific or general, in Pennsylvania. MSL has done neither.

Federal Rule of Civil Procedure 4 allows a federal district court to exercise personal jurisdiction over defendants to the extent allowed by the law of the state where the court is located. Pennsylvania has two statutes that confer personal jurisdiction. 42 Pa.Const.Stat.Ann. §§ 5301, 5322. *General* jurisdiction over an individual defendant is based on the individual's presence or domicile in Pennsylvania when served or on the individual's consent to jurisdiction. 42 Pa. Const.Stat.Ann. § 5301(a)(1) (Purdon 1993). *Specific* jurisdiction over a person is based on the cause of action arising from the person's activities and contacts in Pennsylvania. 42 Pa. Const.Stat.Ann. § 5322(a) (Purdon 1993).

Monk has stated in his affidavit that he has never lived in Pennsylvania.[6] MSL does not offer evidence of either in-state service or of consent. Therefore, I find that there is no basis for the exercise of general personal jurisdiction over Monk.

■ I also find that MSL has not shown that I may exercise specific personal jurisdiction over Monk.[7] MSL must allege that Monk did something in Pennsylvania to injure it. *Provident Nat'l Bank v. California Fed. Sav. and Loan*, 819 F.2d 434, 437 (3d Cir.1987). MSL has not alleged with "reasonable particularity" any of Monk's Pennsylvania contacts that had anything to do with MSL, much less anything that injured MSL. Monk states in his affidavit that his

visits to Pennsylvania have been infrequent and totally unrelated to MSL or its application for ABA accreditation. MSL has not countered the affidavit with any evidence to the contrary. In its memorandum in opposition to Monk's motion, not in the complaint, MSL claims that Monk was considered for a deanship at Temple University in Philadelphia and "presumably had contacts with Pennsylvania in that connection." What MSL fails to do, however, is suggest how the steps Temple and Monk took in the dean-selection process[8] had anything to do with the ABA's failure to grant MSL accreditation.

MSL refers to its previous memorandum in opposition to the motion of the 21 other individual defendants to dismiss for lack of personal jurisdiction. In that earlier memorandum, MSL stated that the individual defendants "must have" engaged in accreditation activities in Pennsylvania. Allegations of what Monk "must have" done do not establish what he *did* do or provide a basis for hauling him into court. See *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 846 F.Supp. 374, 379 (E.D.Pa. 1994). I find that MSL has failed to state anything Monk himself did in Pennsylvania that gave rise to MSL's cause of action and that would permit the exercise of personal jurisdiction over him.

■ MSL argues in its opposition to Monk's motion to dismiss that because there is jurisdiction over the corporate, or organizational, defendants, there is jurisdiction over him. That is simply wrong. MSL's complaint alleges that Monk is the executive director of the AALS and that his part in enforcing the ABA's criteria was through the AALS for whom he trained inspection team members.[9] The court's jurisdiction over the AALS does not give it jurisdiction over Monk, the AALS's executive director. *Simkins Corp. v. Gourmet Resources Int'l*, 601 F.Supp. 1336, 1345 (E.D.Pa.1985). *See also*

6. For the purpose of considering general personal jurisdiction I will consider where Monk "lives" as the equivalent of where he is "domiciled."

7. For a complete discussion of the applicable law concerning minimum contacts giving rise to the

cause of action, see *Massachusetts School of Law*, 846 F.Supp. at 377–78.

8. He did not get the job.

9. Teachers beware. The sins of your students may be visited upon you.

*Amplifier Research Corp. v. Hart,* 144 Bankr. 693, 696 (E.D.Pa.1992) (president of defendant corporation dismissed for lack of personal jurisdiction when plaintiff did not set forth what president did to subject himself to jurisdiction); *Donner v. Tams-Witmark Music Library, Inc.,* 480 F.Supp. 1229, 1233 (E.D.Pa.1979) (courts generally have not exercised personal jurisdiction over individuals for their acts done in a corporate capacity). Allowing personal jurisdiction over a corporate officer or director, based on the officer's corporate activities, would subject corporate officers or directors to suit in any state where their corporation does business and would violate due process. *Simkins,* 601 F.Supp. at 1344–45 (citation omitted). MSL has failed to show that Monk's own activities in Pennsylvania would warrant the exercise of personal jurisdiction over him. *Id.* at 1345.

The same is true so far as jurisdiction over Monk by reason of the court's jurisdiction over the other organizational defendants, ABA, LSAC, or LSAS. The complaint alleges that Monk "participated" in "enforcing the anticompetitive ABA accreditation criteria at issue" through his position with the AALS. Plaintiff's own allegation defeats any contention that Monk, as an individual, did anything relating to MSL.

■ Nor does co-conspirator jurisdiction provide a basis for personal jurisdiction over Monk as an individual.[10] Monk as an individual cannot conspire with the AALS because, as the executive director of the AALS, he is not legally distinct from it. Similarly, because MSL has alleged that Monk's activities *vis a vis* the other organizational defendants were carried out in his capacity as executive director of the AALS, he cannot individually be said to have conspired with the organizational defendants. MSL makes clear that whatever Monk did, he did for the AALS.[11]

MSL fares no better if it is argued that Monk conspired with the other 21 individual defendants. Monk could, as a matter of law, individually conspire with other entities, including the individual defendants. *Weiss v. York Hosp.,* 745 F.2d 786, 813 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). Plaintiff's allegation, however, is not that Monk did so, but that he did not do so. Therefore, the swath cut by the catch-all allegation that "defendants have engaged in combinations, conspiracies, and agreements, and have organized a group boycott," and that they have "engaged in a conspiracy to monopolize and attempt to monopolize" does not extend the allegations against Monk from his participation only through the AALS, to encompass any unspecified activities by Monk as an individual acting for himself.

Although this court can exercise personal jurisdiction over the four organizational defendants, plaintiff's allegations show there is no personal jurisdiction over Monk. No basis for general jurisdiction has been asserted, and MSL has plead itself out of court with regard to specific jurisdiction over Monk. Monk's motion to dismiss for lack of personal jurisdiction must be granted, and I need not consider his Federal Rule of Civil Procedure 12(b)(6) motion or his venue argument.

An appropriate order follows.

## *ORDER*

AND NOW, this 20th day of June, 1994, it is hereby ordered that the motion of defendant, the American Association of Law Schools, to dismiss the claims against it is DENIED; and the motion of defendant, Carl C. Monk, to dismiss the claims against him for lack of personal jurisdiction is GRANTED.

---

**10.** For a detailed discussion of the lack of co-conspirator jurisdiction in this case, see *Massachusetts School of Law,* 846 F.Supp. at 379–380; Order of May 31, 1994 (finding there is no basis for exercise of co-conspirator jurisdiction over 21 other individual defendants). *See also Oksanen v. Page Memorial Hosp.,* 945 F.2d 696, 703 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 973, 117 L.Ed.2d 137 (1992); *Weiss v. York*

*Hosp.,* 745 F.2d 786, 813 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985).

**11.** The AALS, of course, can be said to have conspired with the other organizational defendants.