**SURGICAL LASER TECHNOLOGIES, INC.,**

v.

**C.R. BARD, INC., Bard Urological Division, Trimedyne, Inc.**

**Civ.A. No. 94–CV–7073.**

United States District Court, E.D. Pennsylvania.

April 4, 1996.

---

there is no basis for personal jurisdiction. For the reasons discussed below I will grant Trimedyne's motion.

A federal court applies the long-arm statute of the state in which it sits. Pennsylvania has authorized its courts to exercise jurisdiction to the maximum extent permitted by the Constitution's Due Process clause. *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir.1987). Thus, it is the Due Process clause that provides the relevant limits for this personal jurisdiction inquiry.

The Due Process clause permits the exercise of jurisdiction over non-resident corporate defendants in two distinct situations. First, if the defendant maintains continuous and systematic contacts with the forum state, the court can exercise *general* jurisdiction. In these situations, the relationship between the plaintiff's claims and the defendant's forum state contacts is irrelevant—the court can exercise jurisdiction to hear any claim brought against the defendant. Second, if the plaintiff's claims are related to the defendant's activities within the forum state, the defendant has "minimum contacts" with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice, the court can exercise *specific* jurisdiction. In these situations, the relationship between the plaintiff's claims and the defendant's forum state contacts is critical—the court can only exercise jurisdiction over the defendant for claims arising out of its activities within the forum state.

In the instant case, SLT alleges[1] that Trimedyne has the following contacts with Pennsylvania:

1. In 1992, a Trimedyne officer visited SLT in Pennsylvania in order to obtain a license to use certain of SLT's devices. The negotiations were unsuccessful. A Trimedyne officer also placed a phone call to SLT in Pennsylvania.

Gene E.K. Pratter, Philadelphia, PA, for Plaintiff.

Thomas M. Kittredge, Philadelphia, PA, for C.R. Bard, Inc.

Wilbur L. Kipnes, Philadelphia, PA, for Trimedyne.

### MEMORANDUM AND ORDER

DITTER, District Judge.

In its second amended complaint, Surgical Laser Technologies, Inc. (SLT) alleges that C.R. Bard, Inc. (Bard) wrongfully entered into contract negotiations with it in order to extract secret financial and product information. Bard then allegedly conveyed this secret information to SLT's competitor, Trimedyne. Trimedyne also allegedly attempted to sabotage a contract between SLT and its Indian distributor in India. SLT claims that subject matter jurisdiction is based on diversity of citizenship.

Trimedyne has moved for dismissal under Fed.R.Civ.Pro. 12(b)(2). It maintains that

---

1. Once a jurisdictional defense is raised, plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction. *Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539, 542 (3d Cir.1985).

2. Trimedyne and Bard have a contract whereby Bard gives Trimedyne a percentage of certain sales. Bard makes some of these sales in Pennsylvania.

3. Two Trimedyne employees, though not required to do so, live and work out of their homes in Pennsylvania.

4. Trimedyne paid $994 in corporate Pennsylvania sales taxes and sold about $50,000 worth of goods in Pennsylvania in 1994.

5. Trimedyne once supplied Bard with a laser system to use in clinical trials in Philadelphia.

On the other side of the scale, it should be noted that Trimedyne is a Nevada corporation with its principal place of business in California; has no agent for service in Pennsylvania; does not own or directly lease any property in Pennsylvania; has no Pennsylvania telephone listing or address; and does not advertise in any Pennsylvania publications.

Based on these facts, this court cannot maintain *general* jurisdiction over Trimedyne. In *Gehling*, 773 F.2d at 542, the Third Circuit held that a defendant did not have continuous and systematic contacts with Pennsylvania where it advertised in two national newspapers that had a substantial circulation in Pennsylvania, got six percent of its students from Pennsylvania, staged a media campaign that included appearances on Philadelphia radio and television shows, and entered into a long-term arrangement with a school in Pennsylvania. Similarly, the Supreme Court held that the systematic and continuous contact standard was not satisfied where a defendant's only contacts with the forum state consisted of sending its chief operating officer to negotiate a contract, making almost $4 million in purchases from distributors, accepting almost $5 million in payments in the form of checks drawn from a forum state bank, and sending personnel for training. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). It is significant to note that the defendant in *Helicopteros* did not have a place of business and was not licensed to do business in the forum state. *Id.*

Both *Helicopteros* and *Gehling* illustrate that the continuous and systematic standard is not an easy one to meet. The defendants' contacts with the forum states in those cases, while considerably more extensive than Trimedyne's Pennsylvania connections, were deemed inadequate to meet the constitutional threshold. Thus, I find that this court cannot exercise general jurisdiction over Trimedyne because there was no continuous and systematic connection between the defendant and Pennsylvania.

 Still unresolved though is the question of whether this court may exercise *specific* jurisdiction over Trimedyne. Only those forum state contacts related to plaintiff's cause of action are relevant to this analysis. The contacts discussed above do not relate to plaintiff's claims against Trimedyne (which are for tortious interference) and are not therefore relevant to the question of specific jurisdiction.[2] Plaintiff argues, however, that although Trimedyne's allegedly tortious conduct happened outside Pennsylvania, this court can predicate specific jurisdiction on the fact that the harm flowing from Trimedyne's conduct manifested itself inside Pennsylvania.[3]

Plaintiff mainly relies on *Paolino v. Channel Home Ctrs.*, 668 F.2d 721 (3d Cir.1981) to support its conduct-outside/harm-inside specific jurisdiction position. In that case, Paolino, a Pennsylvania resident, invented a device which was protected under Pennsylvania law as a trade secret. Air Control, a company without any ties to Pennsylvania, negoti-

---

2. Contrasted by a situation where plaintiff might claim that Trimedyne's alleged efforts to sabotage the contract with the Indian distributor took place in Pennsylvania. In that case, the claim, tortious interference, would arise out of the defendant's contact with the forum state.

3. It is clear that Pennsylvania's long-arm statute confers jurisdiction on a tribunal in this Commonwealth where a tort, committed out-of-state, harms an in-state resident. 42 Pa.Con.Stat.Ann. § 5322(a)(4). However, as mentioned above, concluding that the long-arm statute would permit the exercise of jurisdiction only begs the question of whether such an exercise would survive constitutional scrutiny.

ated an agreement with Paolino to use the device. Once Paolino disclosed the device's particulars, however, Air Control breached the agreement and manufactured the device without giving Paolino the agreed percentage of profits. Paolino brought suit in Pennsylvania and Air Control challenged the court's exercise of personal jurisdiction.

The Third Circuit held that jurisdiction over Air Control existed because Air Control, knowing that Paolino, a Pennsylvania resident, had an interest in a trade secret protected by Pennsylvania, obtained his property in confidence, and then set out on a course of action that would destroy it. The court reasoned that because Pennsylvania law created the property interest, Pennsylvania had an interest in protecting its resident from the property's willful destruction. When Air Control induced plaintiff to entrust to it that creature of Pennsylvania law on a promise of confidentiality and then misappropriated it, Air Control obviously knew its actions would cause harm in Pennsylvania no matter where the misappropriation occurred. Moreover, because Air Control's tortious conduct was not only directed at a Pennsylvania resident (thus foreseeably causing harm in Pennsylvania), but also involved negotiating and breaching a contract for use of property protected as a Pennsylvania trade secret, Pennsylvania was a foreseeable forum for litigation arising out of the incident.

 Unlike Air Control, Trimedyne has not directed any activity at Pennsylvania: [4] no negotiation, no bid, no bargain, no benefit, no breach, no betrayal. Its alleged interference with SLT's contract took place in India, half a world away. Its alleged receipt of SLT's trade secrets similarly took place outside Pennsylvania.[5] While Trimedyne could have reasonably foreseen that either or both of these activities would cause harm to SLT in Pennsylvania, this knowledge, standing alone, does not establish the minimum contacts required for a Pennsylvania court to exercise jurisdiction. Foreseeability of harm within the forum state must be accompanied by conduct directed at the forum state in order for the defendant to reasonably anticipate being haled into the state's courts. There is a critical difference between an act which has an effect in the forum and one directed at the forum itself.[6] The bottom line is that any injury that manifested itself within Pennsylvania because of Trimedyne's tortious conduct outside Pennsylvania, although foreseeable, was fortuitous, not purposeful.

 Standing alone, the allegation that tortious conduct outside Pennsylvania foreseeably caused harm inside Pennsylvania is simply not enough to alert a reasonable person that he might be haled into a Pennsylvania court. See Narco Avionics, Inc. v. Sportsman's Market, Inc., 792 F.Supp. 398, 407 (E.D.Pa.1992) (Waldman, J.). Trimedyne, therefore, does not have the requisite minimum contacts with this Commonwealth on which to predicate jurisdiction.

I find under these circumstances that the exercise of jurisdiction over Trimedyne would be inconsistent with the Due Process clause. I will therefore grant Trimedyne's motion to dismiss. An appropriate order follows.

### ORDER

AND NOW, this 4th day of April, 1996, defendant Trimedyne's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) is hereby granted.

---

4. Of course, when I talk about directing activity at "Pennsylvania," I do not mean the legal entity or government of Pennsylvania but rather the jurisdictional area.

5. Either of these events could have taken place across the Delaware river in New Jersey without affecting the result. The issue is not a matter of miles but of non-forum activity.

6. For example, if defendant, a New Jersey resident who has never been to Pennsylvania, punches plaintiff, a Pennsylvania resident, in New Jersey, it is foreseeable that harm will be realized in Pennsylvania—plaintiff may miss work, go on welfare to support his family, and become generally unpleasant—but absent some conduct by defendant directed at Pennsylvania rather than simply directed at plaintiff, Pennsylvania is not a reasonably foreseeable forum.