SANTANA PRODUCTS, INC., Plaintiff,

v.

BOBRICK WASHROOM EQUIPMENT, Bobrick Corporation, the Hornyak Group, Inc., Vogel Sales Company, Sylvester & Associates, Ltd., Fred Sylvester Defendants

No. 3:CV–96–1794.

United States District Court, M.D. Pennsylvania.

July 24, 1998.

Butler & LaBelle, Scranton, PA, for plaintiff.

Walter F. Casper, Jr., Carbondale, PA, for defendants.

## MEMORANDUM

VANASKIE, District Judge.

On October 1, 1996, plaintiff Santana Products, Inc. (Santana) instituted this antitrust action against defendants Bobrick Washroom Equipment, Bobrick Corporation, The Hornyak Group, Inc., Vogel Sales Company, Sylvester & Associates, Ltd., and Fred Sylvester, alleging that the defendants had conspired to interfere with Santana's business through the use of false advertising materials and statements. (Dkt. Entry 1.) On July 1, 1997, defendants Sylvester & Associates, Ltd. and Fred Sylvester (hereinafter collectively referred to as the Sylvesters) filed a motion for summary judgment, asserting that this Court lacked personal jurisdiction over them. (Dkt. Entry 57.)[1] Because Santana has failed to present sufficient evidence that the Sylvesters have the requisite minimum contacts with Pennsylvania such that maintenance of this suit against the Sylvesters in this District would not offend traditional notions of fair play and substantial justice, their motion to dismiss for lack of personal jurisdiction will be granted.

---

1. On July 16, 1997, Santana filed a motion to strike Sylvester's motion for summary judgment for lack of personal jurisdiction, asserting that lack of personal jurisdiction must be asserted by way of motion to dismiss, which does not address the merits of a claim, as opposed to a summary judgment motion, which generally rests upon the merits of a claim. (Dkt. Entry 70.) On May 27, 1998, I denied Santana's motion to strike, explaining that Sylvester's motion for summary judgment would be treated as a motion to dismiss for lack of personal jurisdiction. (Dkt. Entry 168.)

## I. BACKGROUND

Santana is a Virginia corporation with its principal place of business in Scranton, Pennsylvania. (Complaint (Dkt. Entry 1) ¶ 2.) Defendant Bobrick Corp. and defendant Bobrick Washroom Equipment, Inc. (collectively referred to as Bobrick) are both California corporations with their principal places of business in California. (*Id.* ¶ 3.) Defendant Hornyak Group is a Delaware corporation with its principal place of business in Pennsylvania. (*Id.* ¶ 4.) Defendant Hornyak Group is a Bobrick architectural representative for Pennsylvania. (*Id.*) Defendant Vogel Sales Corp. is a Pennsylvania corporation with its principal place of business in Pennsylvania. (*Id.* ¶ 5.) Defendant Vogel Sales Corp. is a Bobrick architectural representative for Pennsylvania. Defendant Fred Sylvester is a resident of New York State. (*Id.* ¶ 6.) Defendant Sylvester & Associates, Ltd. is a New York corporation with its principal place of business in New York. (*Id.*) Sylvester is designated as the a Bobrick architectural representative for New York and New Jersey. (Plf's Stat. of Facts (Dkt. Entry 68) ¶¶ 1–5.) Bobrick has over fifty architectural representatives throughout all fifty states. (Complaint (Dkt. Entry 1) ¶ 31.)

Both Bobrick and Santana manufacture toilet partitions and other accessories that are used in the construction of large public restrooms. Santana contends that the defendants were part of a conspiracy to frighten Santana's potential consumers with false advertising information that portrayed Santana's products as flammable and dangerous. In particular, Santana contends that Bobrick used its architectural representatives to spread the "fire scare" through promotional videos, literature, and personal interaction with potential customers. (*Id.* ¶ 32.) Santana's complaint makes no reference to any specific instances of disseminating false information in Pennsylvania. Moreover, there are no allegations of any meetings, conferences, educational sessions or any other activity in Pennsylvania. In fact, the only references to Pennsylvania in the complaint

concern the location of Santana and defendants Hornyak Group and Vogel Sales Corp.

In response to the Sylvesters' personal jurisdiction challenge, Santana contends that Sylvester & Associates transacts business in Pennsylvania through its relationship with Bobrick. (Plf's Stat. of Facts (Dkt. Entry 68) ¶¶ 1–5.)[2] Santana notes that Bobrick has designated Sylvester & Associates as its architectural representative for New York and New Jersey in the Sweets Catalog, which has a national distribution. (*Id.*) Furthermore, Santana notes that the marketing agreement between Bobrick and its architectural representatives, including Sylvester & Associates, encouraged those representatives to generate business throughout the United States, not just the isolated region to which an individual representative was assigned. (*Id.*)

After engaging in more discovery on the personal jurisdiction issue, Santana presented the following additional facts to support personal jurisdiction in this District. First, Fred Sylvester admitted that he knew that Santana had its corporate headquarters in Pennsylvania. (Santana's Supp. Brf. (Dkt. Entry 133) at 2.) In addition, Fred Sylvester was a sales manager for METPAR, one of the alleged co-conspirators with Bobrick, from 1987 through 1989, and he allegedly was aware of the false advertising material at that time. (*Id.* at 3.) Santana contends that "it is clear that Mr. Sylvester was aware that the Formica videotape was used by Bobrick and its architectural representatives to target Santana's product, based on his admission that he had read the Bobrick Sales Bulletin A25E–90, distributed to Bobrick's architectural representatives on September 18, 1990, which specifically identifies various instances in which project architects had canceled specifications calling for Santana's product after being shown the Formica videotape." (*Id.* at 4.) Fred Sylvester also admitted to using the allegedly false promotional video in connection with his business transactions in New York. (*Id.*) Moreover, Fred Sylvester transacted business in Pennsylvania on *one* occasion when he attended a

**2.** Santana also contends that any of Bobrick's goods that are warehoused in Pennsylvania may

be attributed to Sylvester by virtue of its relationship with the other defendants. (*Id.*) ¶ 10.

distributor meeting in Philadelphia as an employee of METPAR. (*Id.* at 4–5.) Finally, Sylvester & Associates has an advertisement on the world-wide web that contains information that would enable a person to contact it. (*Id.* at 7.)

Based upon all of these facts, Santana contends that this Court may properly maintain personal jurisdiction over the Sylvesters. On the other hand, the Sylvesters maintain that this evidence does not warrant the exercise of jurisdiction over them.

## II. DISCUSSION

Because personal jurisdiction is a waivable defense under Federal Rule of Civil Procedure 12(h)(1), the defendant bears the initial burden of raising lack of personal jurisdiction. *Clark v. Matsushita Elec. Indus. Co.,* 811 F.Supp. 1061, 1064 (M.D.Pa.1993). Once the defense is raised, however, the burden shifts to the plaintiff to prove that exercise of jurisdiction is permissible. *Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 146 (3d Cir.), *cert. denied,* 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992). On March 4, 1997, Sylvester filed an answer to Santana's complaint which asserted as an affirmative defense the lack of personal jurisdiction. (Answer (Dkt. Entry 19) at 18.) On March 6, 1997, after a case management conference at which the personal jurisdiction issue was discussed, a deadline of July 1, 1997 was set for the filing of a motion challenging personal jurisdiction. (Dkt. Entry 21.) The Sylvesters filed their motion asserting a lack of personal jurisdiction in a timely manner. Thus, the burden has shifted to Santana to demonstrate the existence of personal jurisdiction over the Sylvesters.

Federal Rule of Civil Procedure 4(e) permits a district court to assert personal jurisdiction over a nonresident to the extent allowed under the law of the state where the district court sits. *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984). Pennsylvania law extends jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b). Thus, the reach of jurisdiction under Pennsylvania law is coextensive with the Due Process Clause of the United States Constitution.

Due process requires that the defendant have "minimum contacts" with the forum state such that maintenance of the action does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In order to satisfy the minimum contacts requirement, the court must be able to point to "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus, invoking the benefits and protections of its law." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Clark v. Matsushita Elec. Indus. Co.,* 811 F.Supp. 1061, 1065 (M.D.Pa.1993).

There are two theories under which a defendant is subject to personal jurisdiction:

> If the plaintiff's cause of action arises out of a defendant's forum-related activities, that defendant may be subject to the state's jurisdiction under 'specific jurisdiction' so long as jurisdiction is authorized by a 'long-arm' statute and the defendant has sufficient minimum contacts with the state as defined by *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). If the claim is connected to a defendant's non-forum related activities, a defendant may be subject to the 'general' jurisdiction of the court so long as it has 'continuous and substantial' attachments with the forum state.

*Allied Leather Corp. v. Altama Delta Corp.,* 785 F.Supp. 494, 497 (M.D.Pa.1992) (citations omitted). Under each theory, the focus is upon the defendant's contacts with the forum state.

In this case, Santana has failed to demonstrate "continuous and substantial" attachments between the Sylvesters and Pennsylvania such that it may be said that "general" personal jurisdiction exists. There is no evidence of any contract between Sylvester & Associates and a Pennsylvania business. Although Santana contends that Sylvester &

Associates was encouraged by Bobrick to generate business in other jurisdictions, Santana has failed to identify a *single* occasion when Sylvester & Associates generated a business contact in Pennsylvania.[3] Further, the mere fact that Sylvester & Associates appeared as a Bobrick architectural representative for New York and New Jersey in a national publication does not establish any connection with Pennsylvania. Although the publication may be distributed nationwide, the advertisement merely indicated that Sylvester & Associates was a New York and New Jersey architectural representative, not a Pennsylvania representative. Moreover, the inclusion of Sylvester & Associates on a passive web page, *i.e.*, a web page that merely provides information but through which no business is transacted, will not provide a sufficient basis upon which to base general jurisdiction. *See Gehling v. St. George's Sch. of Medicine, Ltd.*, 773 F.2d 539, 542 (3d Cir.1985) (finding that mere advertisement in the *New York Times* and the *Wall Street Journal* insufficient to establish minimum contacts with Pennsylvania); *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Engas*, 675 F.2d 587, 589 (3d Cir.1982) (holding that advertisement in Martindale Hubbel Law Directory which circulates in Pennsylvania insufficient to create personal jurisdiction); *Weber v. Jolly Hotels*, 977 F.Supp. 327, 334 (D.N.J.1997) ("exercising jurisdiction over a defendant who merely advertises its services or product on the Internet would violate the Due Process Clause of the Fourteenth Amendment"); *see also Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 29 (2d Cir.1997) (finding that the act of creating a web page did not create personal jurisdiction in New York); *cf. Zippo Mfg. Co. v. Zippo Dot Com. Inc.*, 952 F.Supp. 1119, 1125–26 (W.D.Pa.1997) (noting that where a company contracted with 3000 Pennsylvania residents *over* the Internet, personal jurisdiction in Pennsylvania was proper); Note, The Presence of a Web Site as a Constitutionally Permissible Basis for Personal Jurisdiction, 73 *Ind. L.J.* 297, 326–27 (1997) ("Of the two approaches to jurisdiction that district courts have developed, the more appropriate approach is that which favors jurisdiction over entities that solicit business through a web site.").[4]

In sum, there has been no showing that the Sylvesters' contacts with Pennsylvania are so continuous and systematic that maintaining jurisdiction over them would not offend traditional notions of fair play and substantial justice. Accordingly, exercising jurisdiction over them under the "general" prong of personal jurisdiction jurisprudence is not warranted.

Santana does not seriously contend otherwise. Instead, it maintains that exercise of jurisdiction is appropriate under the "specific" jurisdiction analysis. In this regard, Santana, citing the Pennsylvania long arm statute, asserts that personal jurisdiction may be maintained in Pennsylvania because the Sylvesters' tortious conduct outside Pennsylvania caused an injury inside Pennsylvania. 42 Pa.C.S.A. § 5322(a)(4) (personal jurisdiction in Pennsylvania exists where a defendant causes "harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth"). This provision is often referred to as the "tort out / harm in" provision. Santana argues that Fred Sylvester was aware that Santana had its principal place of business in Pennsylvania and that the ultimate economic effects of any conduct

---

**3.** Santana argues that defendant Fred Sylvester transacted business in Pennsylvania when he attended a METPAR distributor meeting as a sales manager for METPAR. The mere assertion of this as a basis for personal jurisdiction demonstrates the weakness of Santana's assertion of personal jurisdiction. First, defendant Fred Sylvester was not conducting *his* business in Pennsylvania; rather, he was in Pennsylvania as an agent of METPAR. Moreover, Santana settled its claims against METPAR and released METPAR and *all of its agents and employees* from liability for any actions in connection with this matter. (Sylvester's Reply Brf. (Dkt. Entry 136) at 3.)

Thus, Fred Sylvester's actions on behalf of MET-PAR provide no foundation for the assertion of personal jurisdiction over him.

**4.** At oral argument, Santana's counsel conceded that passive advertisement on the Internet would not provide a basis for personal jurisdiction when standing alone. Santana contends, however, that such passive advertisement should be considered in connection with the other activities of the Sylvesters that were aimed at Pennsylvania.

affecting Santana's sales would be felt in Pennsylvania. Thus, Santana relies upon its residency within Pennsylvania as the basis upon which to assert jurisdiction, *i.e.*, any corporate loss of New York and New Jersey sales would ultimately manifest itself in Santana's corporate books in Scranton, Pennsylvania.

It is clear that the Sylvesters alleged conduct satisfies the requirements of § 5322(a)(4). *See Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 201 (3d Cir. 1998) ("[Section 5322(a)(4)] simply extends jurisdiction to anyone who causes harm or tortious injury, intentionally or not, in Pennsylvania through acts or omissions outside Pennsylvania."). Merely because the Sylvesters conduct falls under § 5322(a)(4), however, does not end the inquiry. It must also be demonstrated that the assertion of personal jurisdiction through § 5322(a)(4) comports with the requirements of the Due Process Clause. *See Pennzoil Prods. Co.*, at 202 ("Although we conclude that [§ 5322(a)(4)] extends jurisdiction to [the defendant], we must still determine whether the strictures of constitutional due process (*i.e.*, minimum contacts and notions of 'fair play and substantial justice') would be observed by asserting jurisdiction."); *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 299 n. 12 (3d Cir.) (noting that even under § 5322(a)(4) a plaintiff must also establish "that a defendant has sufficient minimum contacts with the forum state"), *cert. denied*, 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985); *see also Driscoll v. Matt Blatt Auto Sales*, 1996 WL 156366, at *2 (E.D.Pa.1996) ("Satisfying [§ 5322(a)(4)] alone, however, is not sufficient to allow Pennsylvania courts to exercise personal jurisdiction over non-resident defendants. Plaintiffs must also show that exercise of jurisdiction under the Long Arm Statute conforms with federal constitutional requirements of due process."); *Von Pein v. Ciccotelli*, 1995 WL 79527, at *2 (E.D.Pa. 1995) ("This court has previously observed the inherent conflict between the Third Circuit's focus on the defendant's actual contact with the forum ... and § 5322(a)(4)'s 'creation of a fictional contact with the forum.' Courts have avoided this conflict by focusing the effects inquiry upon whether the exercise of personal jurisdiction comports with due process." (citations omitted)). After it has been determined that Pennsylvania's Long Arm Statute applies, a two prong inquiry must be pursued: (1) does the defendant have sufficient minimum contacts with the forum state; and (2) does the exercise of personal jurisdiction comport with the notions of far play and substantial justice. *See Pennzoil Prods. Co.*, at 203.

█ In the absence of any contacts with Pennsylvania, the fact that harm is felt in Pennsylvania from conduct occurring outside Pennsylvania is not sufficient to satisfy due process unless the defendant targets Pennsylvania through the tortious conduct. *See Surgical Laser Techs. v. C.R. Bard, Inc.*, 921 F.Supp. 281, 285 (E.D.Pa.1996); *see also Supra Medical Corp. v. McGonigle*, 955 F.Supp. 374, 382 (E.D.Pa.1997) ("Although Defendant Lewis served as an independent contractor for Supra Medical and apparently never traveled to Pennsylvania, evidence shows that he purposely directed his activities toward this forum."); *Driscoll*, 1996 WL 156366, at *3 ("In the area of specific jurisdiction '[t]here is an important difference between acts which result in injury in the forum and acts targeted at the forum for the very purpose of having an effect there.'"). For instance, in *Reliance Steel Products Co. v. Watson Ess, Marshall & Enggas*, 675 F.2d 587 (3d Cir. 1982), the plaintiff, a Pennsylvania corporation, brought a suit in Pennsylvania against a law firm that represented it in another jurisdiction. The plaintiff had initiated the contact with the foreign law firm and the dispute involved a controversy in another state. *Id.* at 589. The corporate plaintiff alleged that the non-forum defendant committed legal malpractice, which occurred outside Pennsylvania, and that the plaintiff suffered an economic injury in Pennsylvania. Thus, the corporate plaintiff attempted to rely upon § 5322(a)(4). *Id.* at 588. The Third Circuit, however, determined that the non-forum defendant lacked sufficient minimum contacts with Pennsylvania for the exercise of personal jurisdiction. *Id.* at 589.

In *Surgical Laser Technologies v. C.R. Bard, Inc.*, 921 F.Supp. 281 (E.D.Pa.1996), one of the defendants, Trimedyne, allegedly

attempted to sabotage a contract between plaintiff Surgical Laser Technologies (SLT) and its foreign distributor. In considering the plaintiff's specific jurisdiction claim under § 5322(a)(4) based on the assertion that Trimedyne's tortious conduct in relation to the foreign distributor caused injury in Pennsylvania, the court stated:

> Trimedyne has not directed any activity at Pennsylvania, no negotiation, no bid, no bargain, no benefit, no breach, no betrayal. Its alleged interference with SLT's contract took place in India, a half a world away. Its alleged receipt of SLT's trade secrets similarly took place outside of Pennsylvania [in New Jersey]. While Trimedyne could have reasonably foreseen that either of these activities would cause harm to SLT in Pennsylvania, this knowledge, standing alone, does not establish the minimum contacts required for a Pennsylvania court to exercise jurisdiction. *Foreseeability of harm within the forum state must be accompanied by conduct directed at the forum state in order for the defendant to reasonably anticipate being haled into the state's court's. There is a critical difference between an act which has an effect in the forum and one directed at the forum itself.* The bottom line is that any injury that manifested itself within Pennsylvania, although foreseeable, was fortuitous, not purposeful.

*Id.* at 285 (emphasis added & footnotes omitted).

Santana's argument in this case is no different than that which was rejected in *Surgical Laser Technologies*. It may have been foreseeable that any tortious conduct that interfered with Santana's ability to enter into contractual relations would have its final economic manifestation in Pennsylvania. This economic result does not require a finding of specific personal jurisdiction. The Sylvesters' conduct simply was not directed at Pennsylvania; instead, it was directed at competing with Santana for sales *in New York and New Jersey.* Any financial injury to Santana within Pennsylvania was fortuitous in that it simply depended upon the location of Santana's principal place of business.

The following hypothetical scenario demonstrates the fallacy of Santana's position. Suppose that a locally-owned used car dealer operated a small lot adjacent to a large dealership in Pennsylvania owned by the Ford Motor Company of Michigan. As was his custom, the used car dealer would walk through Ford's lot and converse with Ford's customers. On numerous occasions, the used car dealer, through the use of false and misleading statements regarding the safety of Ford automobiles, convinced individuals to purchase a used car from his lot, as opposed to a new car from Ford. The used car dealer, being an expert on automotive facts, was aware that Ford was a Michigan corporation and that its principal place of business was in Michigan. Assuming that Michigan has a counterpart to § 5322(a)(4), an attempt by Ford to assert a claim against the used car dealer in Michigan on the basis that the used car dealer's tortious conduct in Pennsylvania resulted in economic losses to Ford in Michigan would plainly be unsuccessful. The used car dealer had no contacts whatsoever with Michigan. There is nothing to suggest that he anticipated being haled into court in Michigan. Moreover, he never purposefully availed himself of any of the benefits of Michigan law. The traditional notions of fair play and substantial justice would be ill-served by finding specific personal jurisdiction under those facts.

In essence, Santana's position in this case is no different from the hypothetical posed above. Relying upon the Sylvesters' knowledge that Santana had a presence in Pennsylvania, Santana contends that they knew that their alleged tortious conduct would result in economic losses to Santana in Pennsylvania. If personal jurisdiction was created by such a situation, then any individual that interfered with the contractual relation of a national corporation could potentially be haled into court in the state where the national corporation's principal place of business was located based solely upon the economic result of the tortious conduct. Due process requires that in order to exercise specific personal jurisdiction based upon tortious conduct outside the forum state that causes injury within the forum state, the

defendant must actually target the forum state or have some other minimum contacts with the forum state that would satisfy the requirements of the Due Process Clause.[5]

For instance, in *Pennzoil Products Co. v. Colelli & Assocs., Inc.*, the defendant was an Ohio corporation that manufactured a solvent used to reduce the accumulation of wax deposits in the shafts of oil wells. *Pennzoil Prods. Co.*, at 199. The defendant sold its solvent to Ohio oil producers, who sold their oil primarily to refineries in western Pennsylvania. *Id.* Allegedly, the defendant's solvent contained silicon which mixed with the oil and ultimately damaged the plaintiff's refinery in western Pennsylvania. *Id.* The Third Circuit recognized that the defendant's conduct fell within the parameters of § 5322(a)(4), *i.e.*, tortious conduct outside of Pennsylvania with harm resulting in Pennsylvania. *Id.* at 201. In reviewing the defendant's minimum contacts with Pennsylvania, the court noted:

> The Ohio producers sent most of their oil to Pennsylvania; [defendant] indirectly benefited from the sale to Pennsylvania refineries; [defendant] was aware of that indirect benefit; and [defendant] had expressed a desire to preserve its relationship with at least one Pennsylvania refinery [plaintiff's] by conforming its solvents to the refinery's specifications.... We therefore conclude that [defendant] had minimum contacts needed to support the exercise of personal jurisdiction.

*Id.* at 207.

Unlike *Pennzoil Products*, there is no evidence that the Sylvesters were receiving *any* economic benefit resulting from sales in Pennsylvania or any other activity in Pennsylvania. In other words, the volume of Sylvester & Associates sales was not linked to its customers' connections with Pennsylvania. Moreover, the defendant in *Pennzoil Products* actually interacted with the Pennsylvania plaintiff in an attempt to resolve the problems with its solvent that was allegedly resulting in damage to the plaintiff's refinery. Santana has failed to demonstrate that the Sylvesters had *any* direct contact with it.[6]

---

**5.** At oral argument, Santana contended that *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), supported its contention that the Sylvesters' knowledge regarding Santana's presence is Pennsylvania is sufficient to support personal jurisdiction. In *Calder*, however, the Florida defendants wrote an article for a national publication that contained libelous material regarding the California plaintiff. *Id.* at 784–85, 104 S.Ct. 1482. In determining that personal jurisdiction was proper, the Court noted that the defendants had done more than "mere untargeted negligence." *Id.* at 789, 104 S.Ct. 1482. The Court determined that the defendants' intentional tortious conduct was "aimed" at California and that the defendants were aware that the "brunt" of the plaintiff's injury would result in California. *Id.* at 789–90, 104 S.Ct. 1482. Far from supporting Santana's position, *Calder* supports the requirement that the Sylvesters' conduct be "aimed" at Pennsylvania. As noted before, the Sylvesters' actions were "aimed" at competing with Santana in the regional markets of New York and New Jersey, not with causing financial injury to Santana in Pennsylvania. Indeed, Santana also utilizes national sales representatives in the same manner as Bobrick. (See Santana Products Web Site, http://www.santana-products.com/map.htm) In this regard, Santana currently has listed four separate local representatives for the New York, New Jersey and Pennsylvania areas. (Gesco Sales, Syracuse, NY; Michael Erhard, Scranton, PA; Greg Borgia, Scranton, PA; L R Sales, Library, PA. *Id.*) Thus, the Sylvesters' conduct targeted the local competition that the Sylvesters faced in connection with its sales of Bobrick's product. Such conduct simply cannot be viewed as targeting Pennsylvania.

**6.** In this regard, Santana's reliance upon *Techno Corp. v. Dahl Assocs., Inc.*, 535 F.Supp. 303 (W.D.Pa.1982), is misplaced. In *Techno Corp.*, the individual defendants, New Jersey residents, had business dealings with the plaintiff in their corporate capacities for five years. *Id.* at 309. The individual defendants were aware that the plaintiff was a Pennsylvania corporation. *Id.* Moreover, the individual defendants were aware that the plaintiff had been negotiating with a third party and allegedly interfered with those contractual negotiations. *Id.* at 305. Thus, the court concluded that personal jurisdiction was proper. In *Techno Corp.*, however, there was evidence that the individual defendants had some prior dealings with Pennsylvania in their corporate capacities. There is nothing to suggest that the Sylvesters had any prior business relations in Pennsylvania or with Santana.

*Allen Organ Co. v. ELKA, S.p.A.*, 615 F.Supp. 328 (E.D.Pa.1985), upon which Santana also relies, is similarly distinguishable. In that patent infringement case, the defendant, an Italian corporation which manufactured organs, entered into a distributorship agreement with a California company. *Id.* at 329. The contract, however, identified by name a Pennsylvania dealer that would sell the defendant's organs in Pennsylva-

Given that the Sylvesters' conduct was directed at competing in the New York and New Jersey markets and that there is no evidence that the Sylvesters had any business relationships in Pennsylvania, the fortuity that Santana's corporate headquarters are located in Pennsylvania cannot support a finding of personal jurisdiction under the Due Process Clause.[7]

■ Santana also contends that specific personal jurisdiction over the Sylvesters in this District is appropriate because their co-conspirators committed acts within Pennsylvania and those acts may be imputed to the Sylvesters. The assertion of personal jurisdiction over a non-forum defendant based upon the actions of a co-conspirator within the forum still requires the "contacts-with-the-forum analysis." See Massachusetts Sch. of Law v. American Bar. Assoc., 846 F.Supp. 374, 379 (E.D.Pa.1994), aff'd, 107 F.3d 1026, 1042 (3d Cir.), cert. denied, —— U.S. ——, 118 S.Ct. 264, 139 L.Ed.2d 191 (1997). Under Pennsylvania law, personal jurisdiction of a non-forum co-conspirator may be asserted only where a plaintiff demonstrates that substantial acts in furtherance of the conspiracy occurred in Pennsylvania and that the non-forum co-conspirator was aware or should have been aware of those acts. See Raymark Indus., Inc. v. Baron, 1997 WL 359333, at *4 (E.D.Pa.1997) ("Pennsylvania law requires proof that the co-conspirator was or should have been aware of the conspiratorial acts within the forum state."); Murray v. National Football League, 1996 WL 363911, at *15 (E.D.Pa.1996) ("Plaintiff must show that substantial acts in furtherance of the conspiracy occurred in the forum state, 'of which the out-of-state co-conspirator was or should have been aware.' "); Massachusetts Sch. of Law, 846 F.Supp. at 379 ("[T]here must also be substantial acts in furtherance of the conspiracy within the forum, of which the out-of-state co-conspirator was or should have been aware."); Temtex Prods., Inc. v. Kramer, 330 Pa.Super. 183, 479 A.2d 500 (1984) ("Moreover, it has been held that personal jurisdiction over all of the participants in concerted action may be maintained where a significant part of the action took place in the forum state."). Thus, membership in a civil conspiracy, standing alone, will not properly support an assertion of personal jurisdiction. See Murray, 1996 WL 363911, at *16 ("Merely belonging to a civil conspiracy does not make a member subject to the jurisdiction of every other member's forum."); Massachusetts Sch. of Law, 846 F.Supp. at 379 (same); In re Arthur Treacher's Franchisee Litig., 92 F.R.D. 398, 411 (E.D.Pa.1981) (same).

In Massachusetts School of Law, the plaintiff alleged that 21 individual defendants had conspired with the defendant American Bar Association in connection with the improper monopolization of the accreditation process for law schools. Massachusetts Sch. of Law, 846 F.Supp. at 374. None of the 21 individual defendants had any continuous and systematic contacts with Pennsylvania. The court reviewed the complaint and determined that it failed to allege substantial acts, or even any acts, committed in Pennsylvania in furtherance of the conspiracy. Id. at 379–80.

---

nia. Id. In total, there were 13 dealers of the defendant's organs in Pennsylvania. Moreover, the defendant agreed in the contract to defend and indemnify any of the dealers that were sued, regardless of their geographic location. Id. Although the defendant's alleged infringement may have occurred outside of Pennsylvania, the court determined that sufficient minimum contacts existed with Pennsylvania in that the defendant was aware that 13 dealers were selling its products in Pennsylvania and had agreed to defend and indemnify those dealers in the event of a patent infringement suit. Id. at 329. Thus, not only was the defendant aware of and benefiting from the sale of organs in Pennsylvania, it had contractually agreed to defend its Pennsylvania dealers. Santana has failed to present evidence that the Sylvesters had any contacts with Pennsylva-

nia, let alone contacts that rise to the level of those present in Allen Organ.

7. In Pennzoil Products, the plaintiff was a Nevada Corporation with its principal place of business in Texas. Pennzoil Prods. Co., at 199. According to Santana's argument, it would have been constitutionally permissible for the plaintiff to sue the defendant in either Nevada, the plaintiff's state of incorporation, or Texas, the plaintiff's principal place of business, without the defendant having any contact with either of those states simply because the defendant's allegedly tortious conduct in Ohio resulted in economic losses in the plaintiff's corporate books. As noted above, the Due Process Clause simply would not permit the exercise of personal jurisdiction under those circumstances.

Thus, the court refused to exercise personal jurisdiction over the 21 non-forum defendants. *Id.; see also Murray,* 1996 WL 363911, at *15 ("The court cannot exercise personal jurisdiction over a non-resident defendant based solely upon allegations that he is a member of a conspiracy which allegedly includes resident members.").

Likewise, in *In re Arthur Treacher's Franchisee Litig.,* the plaintiff alleged that the defendants had conspired to violate anti-trust laws and breach a franchise agreement. 92 F.R.D. at 398. The plaintiff contended that the conspiracy was orchestrated through several meetings in Philadelphia. Several of the defendants had never attended those Philadelphia meetings, but had attended meetings in Chicago and Baltimore. *Id.* at 411–13. Although the defendants were all related through business ties, the court stated that "[t]he mere existence of a business interrelationship [was] not enough [to support a claim of personal jurisdiction under a conspiracy theory]." *Id.* at 411. The non-forum defendants had never attended any meetings in Philadelphia and the plaintiff had failed to demonstrate that the non-forum defendants were aware or should have been aware of the activities in Philadelphia. *Id.* at 412. Thus, the court determined that it could not exercise personal jurisdiction over the non-forum defendants without violating the due process clause. *Id.*

Finally, in *Boles v. Vanderbilt Shirt Co.,* 1990 WL 74202 (E.D.Pa.1990), the plaintiff asserted a claim for compensation withheld after his termination from defendant corporation. *Id.* at *1. The plaintiff contended

that he met with two individual defendants in the defendant corporation's Pennsylvania affiliate office, where the plaintiff and the individual defendants discussed the withheld compensation. *Id.* at *2. The court determined that a sufficient basis to assert personal jurisdiction existed as to the two defendants that actually met with the plaintiff in Pennsylvania. *Id.* The plaintiff also alleged that defendant Stephen Lurey "encouraged and conspired with the other two individual defendants to deny plaintiff his compensation." *Id.* In determining whether personal jurisdiction was proper against Lurey, the court stated:

> The third individual defendant, Stephen Lurey, is not charged with any contact in the forum state by the plaintiff except for the alleged conspiracy which had effects in Pennsylvania. The mere presence of a conspiracy within a forum state 'is not sufficient to permit personal jurisdiction over co-conspirators.' The allegations do not assert any facts to substantiate plaintiff's theory, nor are there any other contacts with Pennsylvania asserted by the plaintiff, except for the existence of the affiliate Pennsylvania office [of the defendant corporation]. Therefore, it appears that the exercise of personal jurisdiction over Stephen Lurey would offend "traditional notions of fair play and substantial justice."

*Id.; see also Von Pein v. Ciccotelli,* 1995 WL 79527, at *2 (E.D.Pa.1995) (finding lack of personal jurisdiction under conspiracy theory where complaint failed to allege that the out-of-state defendants were aware of the alleged co-conspirator's forum activities).[8]

---

8. *Temtex Products,* a Pennsylvania Superior Court case, is the only Pennsylvania decision addressing the use of a co-conspirator theory to obtain personal jurisdiction over a non-resident co-conspirator. Moreover, the Third Circuit has not addressed whether due process permits the exercise of personal jurisdiction over a non-forum conspirator where that party "knew or should have known" that substantial acts in furtherance of the conspiracy were committed in the forum state by a co-conspirator. Interestingly, other states have taken a more stringent approach to this problem. For instance, in New York, a plaintiff must demonstrate not only that the non-resident defendant was aware or should have been aware of the tortious conduct of the resident co-conspirators, but also that such tor-

tious conduct was "conducted for the benefit of or at the behest of any of the [non-resident] defendants." *Ivy Mar Co. v. C.R. Seasons, Ltd.,* 1997 WL 37082, at *5 (E.D.N.Y.1997). Logically, this approach appears to have more appeal as it requires that the non-forum conspirator benefit from the actions of the co-conspirator. Under this approach, the non-forum conspirator purposefully received a benefit as a result of activities in the forum state. It would be possible to focus upon the non-forum defendant's forum-related contact, *i.e.,* receiving a benefit from a co-conspirator's tortious conduct in the forum state. Such an approach would also be consistent with the Third Circuit's approach in *Pennzoil Products,* where a defendant had little or no direct contact with the forum state but received

In the present case, Santana has filed an eighty-five paragraph complaint totaling thirty-nine pages with fourteen exhibits. Neither the allegations nor the exhibits concern activities that occurred within Pennsylvania. There are no allegations of meetings, planning sessions, conferences, or any other concerted action within Pennsylvania. Although defendants Hornyak Group and Vogel Sales Group are Pennsylvania corporations, there are no specific allegations concerning their conduct within Pennsylvania. Santana contends that the Pennsylvania defendants used the false promotional material, but there are no specific allegations as to the number of times, customers, or dates when such presentations were made. Moreover, Santana, despite the benefit of discovery, has failed to present any evidence that the Sylvesters were aware or should have been aware of substantial acts in furtherance of the conspiracy occurring in Pennsylvania.[9] Thus, the Sylvesters are similarly situated to the non-resident defendants over whom personal jurisdiction was lacking in *Boles, Arthur Treacher's* and *Massachusetts School of Law*. Accordingly, the exercise of personal jurisdiction over the Sylvesters on a conspiracy theory is not warranted.

Santana's reliance upon *Vespe Contracting Co. v. Anvan Corp.*, 433 F.Supp. 1226 (E.D.Pa.1977), is misplaced. In that case, the plaintiff, a subcontractor, brought a breach of contract action against the general contractor (Anvan–Pa), its corporate owner (Anvan–III), a partnership (Ancara), a limited partnership (Anvan Co .), and individual general partners. Anvan–Pa, a Pennsylvania corporation, was owned and operated by Anvan–III, an Illinois corporation. Moreover, the complaint alleged that Ancara, Anvan Co. and the individual partners, all partnerships or residents of Illinois, contracted with Anvan–Pa to provide Anvan–Pa with sufficient funds to pay subcontractors on a Pennsylvania job site. *Id.* at 1230. Given the interlocking business relationships alleged between the parties, the court determined that the non-forum defendants' contacts with Pennsylvania were "numerous, continuous and of a substantial quality." *Id.* at 1235. In that case, the conspiracy resulted from the non-forum defendants' creation of the forum defendant to perpetrate the alleged tortious conduct in Pennsylvania. *Id.* at 1234–35 ("In essence, the complaint alleges that the defendants conspired to establish an

an economic benefit at the expense of the Pennsylvania resident.

In this regard, it is instructional to consider the "hub and spoke" analogy often used in the conspiracy context. At the "hub" of this conspiracy would be Bobrick, while the spokes would be Bobrick's architectural representatives. The Sylvesters' actions benefit them locally and also benefit Bobrick. Thus, each spoke operates in its own self-interest and thereby promotes the interest of the hub. But the fact that Bobrick's Pennsylvania architectural representatives are acting in a certain matter does not confer any substantive benefit upon the Sylvesters; instead, the Pennsylvania architectural representatives benefit themselves and Bobrick through the allegedly tortious conduct. Given the approach taken by the New York courts, Bobrick (the hub) would clearly be subject to personal jurisdiction in any state where its architectural representative (the spoke) acted at its behest and for its benefit. The reverse would not apply. Bobrick's Alaska architectural representative (a spoke) should not be subject to personal jurisdiction in Pennsylvania based upon the actions of Bobrick's Pennsylvania architectural representative (another spoke). Although the Alaska architectural representative may be aware of the conduct of the Pennsylvania architectural representative, such conduct was not done at its request nor would such conduct

result in a benefit to the Alaska architectural representative. It must be emphasized that merely because a non-forum defendant may be liable for tortious conduct of a co-conspirator does not necessarily subject the non-forum defendant to personal jurisdiction in any state where a co-conspirator might reside. As recognized in *Murray, Massachusetts School of Law*, and *Arthur Treacher's*, imputing *conduct* for liability purposes is *not* synonymous with imputing *contacts* for jurisdictional purposes. The mere fact that a non-forum co-conspirator "knew or should have known" that a forum co-conspirator was taking actions in furtherance of the conspiracy does not, standing alone, demonstrate any contact with the forum state necessary for personal jurisdiction. But in this case, Santana has not even met the "knew or should have known" test.

9. In the portions of Fred Sylvester's deposition which have been submitted by Santana, Fred Sylvester states that he was not aware of any instances where other Bobrick architectural representatives (or anyone else) used Bobrick's allegedly false promotional videotape. (Plf's Supp. Brf. (Dkt. Entry 133) Appendix 1, at 143.) Moreover, Fred Sylvester also testified that no other Bobrick architectural representatives ever told him that they were using the videotape. (*Id.*)

interlocking business network which was intended from the outset to defraud subcontractors by undercapitalizing the general contractor [the forum-defendant] and by using the business network to shield the defendants from liability to subcontractors."). Thus, the complaint alleged that the non-forum defendants had established an under-capitalized corporation in Pennsylvania and conducted their business through that corporation. Under such facts, minimum contacts with Pennsylvania were clearly present. In this case, no such contacts exist between the Sylvesters and Pennsylvania.

In short, given the failure of Santana to demonstrate that the Sylvesters have sufficient minimum contacts with Pennsylvania, the traditional notions of fair play and substantial justice would not be served through the assertion of personal jurisdiction over the Sylvesters in this Court.[10]

### III. CONCLUSION

The Sylvesters lack any continuous and systematic contacts with Pennsylvania sufficient to show that general personal jurisdiction exists over them in this District. Although Santana argues that specific personal jurisdiction may be maintained over the Sylvesters because their non-forum tortious conduct resulted in an economic injury to Santana in Pennsylvania, this argument must also fail as Santana has failed to demonstrate that the Sylvesters' non-forum activities were directed at Pennsylvania or that there were sufficient contacts between the Sylvesters and Pennsylvania such that the exercise of personal jurisdiction would be proper under the Due Process Clause. Finally, Santana's assertion of personal jurisdiction under a civil conspiracy theory must also fail. According-

ly, the Sylvesters' motion to dismiss for lack of personal jurisdiction will be granted.

---

10. In the event that this Court determined that it lacked personal jurisdiction over the Sylvesters, Santana requested that this action be transferred to the Eastern District of New York. (Plf's Opp. Brf. (Dkt. Entry 67) at 13). This Court, of course, has the power to transfer the claims against the Sylvesters, despite the absence of personal jurisdiction, if it is determined that the interests of justice will be served by such a transfer. 28 U.S.C. § 1406(a); *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). Santana, however, has failed to demonstrate any prejudice from a dismissal; instead,

Santana has merely stated that a transfer would "preserve the filing of Santana's causes of action without the prejudice of the statute of limitations." (Plf's Opp. Brf. (Dkt. Entry 67) at 14.) Santana has failed to demonstrate that any of its claims would be time-barred in another jurisdiction. Moreover, the complexity of this case and the voluminous filings make a transfer a logistical nightmare. Considering these factors, the interests of justice will not be served by a transfer. Of course, Santana may file another action against the Sylvesters in the Eastern District of New York if it so desires.