**GOODSPORT MANAGEMENT
(USA), INC.**

v.

**SPECIAL EVENTS, INC.**

No. CIV.A. 98–4057.

United States District Court,
E.D. Pennsylvania.

Oct. 29, 1999.

478

Edward J. Hayes, Fox, Rothschild, O'Brien & Frankel, LLP, Philadelphia, PA, for Plaintiff.

Sam L. Warshawer, Jr., Venzie, Phillips & Warshawer, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This case is once again before us on motion of the defendant to dismiss for lack of personal jurisdiction and improper venue. Previously, by Order dated March 17, 1999, we had continued this motion to give the parties an opportunity to develop the record on the issue of the defendant's minimum contacts with Pennsylvania such that it should have anticipated being haled into court here. Depositions on this issue have now been taken and the parties have advised the Court that the motion is ripe for disposition.

### Background

Plaintiff, Goodsport Management (USA), Inc. is a Delaware corporation with offices in Pennsylvania and Canada which is in the business of providing corporate sport and event management, particularly in motor sports. Defendant Special Events, Inc., an Indiana corporation with its principal place of business in Arizona, is in the business of providing hospitality services to, *inter alia*, sports sponsors and their clients.

During 1997, Plaintiff was the authorized representative for Scott Goodyear, a race car driver in the Indy Racing League. Under its agreement with Mr. Goodyear, Plaintiff alleges that it sought and obtained various sponsorships and endorsement opportunities, one of which was with Northern Telecom, Inc. or "Nortel." In exchange for Nortel's agreement to sponsor Scott Goodyear, Plaintiff agreed to provide hospitality services, including a fully-equipped and stocked luxury motor home to Nortel for races and promotional events in which Goodyear participated during the 1997 Indy Race League season. Thereafter, in April or May, 1997, Goodsport entered into an agreement with the defendant whereby in consideration for the payment of $243,000, the defendant was to supply the motor home, supplies, products, etc. necessary to enable Goodsport to service the 1997 Nortel contract. Pursuant to paragraph 4 of the Goodsport/SEI agreement, defendant agreed to refrain from doing business with any of the plaintiff's competitors or clients during the term of the contract and for a period of two years thereafter.

According to the Verified Complaint, without Goodsport's knowledge or consent and in violation of ¶ 4 of the Agreement, SEI began supplying various hospitality services to Nortel which were not supplied in accordance with the Agreement. Plaintiff further avers that SEI breached the agreement by leasing the motor home to third parties during the term of the agree-

ment in violation of the exclusivity clause of the parties' contract, in converting the numerous upgrades and improvements which plaintiff had made to the motor home and in refusing to permit plaintiff to have access to the motor home after the conclusion of the 1997 Indy Race League racing season. Goodsport therefore instituted this action against SEI seeking damages for breach of contract, conversion and tortious interference with contractual relations. Defendant moves to dismiss on the grounds that it does not have the requisite minimum contacts with this forum to permit the exercise of jurisdiction over it.

### Standards Governing Motions Under Rule 12(b)(2)

■ The standard by which a court must judge a Rule 12(b)(2) motion differs from that governing analysis of a Rule 12(b)(6) motion in that while a 12(b)(6) motion requires a court to accept the allegations of the non-moving party as true, a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings, i.e., whether in personam jurisdiction actually lies." *Clark v. Matsushita Electric Industrial Co., Ltd.*, 811 F.Supp. 1061, 1064 (M.D.Pa.1993), *quoting, Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66, n. 9 (3rd Cir.1984). It is clear that since it is a waivable defense under Fed.R.Civ.P. 12(h)(1), it is the defendant who must raise lack of personal jurisdiction by filing a motion to dismiss under Fed.R.Civ.P. 12(b)(2). *Santana Products, Inc. v. Bobrick Washroom Equipment*, 14 F.Supp.2d 710, 712–713 (M.D.Pa.1998). Once the defense is raised, however, the burden shifts to the plaintiff to prove that exercise of jurisdiction is permissible through the production of sworn affidavits or other competent evidence. *Carteret Savings Bank, FA v. Shushan* 954 F.2d 141, 146 (3rd Cir.1992), *cert. denied*, 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992). At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of jurisdiction; once the

motion is made, the plaintiff must respond with actual proofs not mere allegations. *Clark*, 811 F.Supp. at 1064.

### Discussion

■ It has been said that Fed.R.Civ.P. 4(e) is the appropriate starting point for jurisdictional analysis, as the rule authorizes personal jurisdiction to be exercised over nonresident defendants to the extent permissible under the law of the state where the district court sits. *Mellon Bank (East) National Association v. Farino*, 960 F.2d 1217, 1221 (3rd Cir.1992), *citing Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3rd Cir.1990). Pennsylvania's long-arm statute provides that its reach is coextensive with the limits placed on the states by the federal Constitution, and the Constitution's Fourteenth Amendment due process clause defines the limits of the exercise of jurisdiction by means of a two-part test. *Vetrotex Certainteed v. Consolidated Fiber Glass*, 75 F.3d 147, 150 (3rd Cir.1996); 42 Pa.C.S. § 5308, § 5322(b). First, the due process clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties or relations and thus the defendant must have made constitutionally sufficient "minimum contacts" with the forum before it may exercise jurisdiction over him. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–472, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). Second, if sufficient "minimum contacts are shown, jurisdiction may be exercised where the court determines in its discretion that to do so would comport with traditional notions of fair play and substantial justice." *Vetrotex*, 75 F.3d at 150–151, *quoting International Shoe, supra.*

■ A defendant may be found to have purposefully established minimum contacts with a forum state by deliberately

engaging in significant activities or by creating continuing obligations such that he has "availed himself of the privilege of conducting business there." *Arch v. The American Tobacco Company, Inc.*, 984 F.Supp. 830, 835 (E.D.Pa.1997).[1] When ascertaining whether personal jurisdiction exists, courts must resolve the question based on the circumstances that the particular case presents. *Id.,citing Burger King*, 471 U.S. at 485, 105 S.Ct. at 2189. Among the things which are properly considered are the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

█ In application of the preceding principles to the case at hand, we find that the plaintiff has not produced sufficient evidence to sustain its burden of proving that this Court has either specific or general personal jurisdiction over the defendant. Rather, the record reveals that Defendant is an Indiana corporation with its principal place of business in Arizona, which is where its corporate books and its business records are located. Although the corporation has five employees, those employees reside in the states of Virginia, Missouri, Indiana and Texas; there are none in Pennsylvania.

The negotiations which culminated in the formation of the contract at issue in this case were commenced in 1996 when Mark Harder, the President and sole shareholder of SEI, faxed a proposal for the provision of hospitality services for Nortel's sponsorship of Scott Goodyear from his home office in Arizona to Scott Goodyear in Indianapolis, Indiana. Some time later, Mr. Harder received a phone call from Geoffrey Whaling, the President of Goodsport at his home in Arizona. At that· time, Mr. Whaling informed Mr. Harder that Nortel had agreed to sponsor Goodyear and the two men then discussed in further detail the full range of services to be provided by SEI, the locations and venues, and the duration for which those services would be supplied. In January, 1997, Mr. Harder prepared a first draft of the hospitality services contract and sent it to Mr. Whaling in his Toronto, Canada office. Mr. Whaling mailed a revised draft from his office in Canada to Mr. Harder in Arizona later that same month. Subsequently, Mr. Whaling executed the contract on behalf of Goodsport on April 7, 1997 in Indianapolis. Mr. Harder, in turn, executed the contract on behalf of SEI in Indianapolis, Indiana on May 11, 1997.

What's more, although the contract does provide that it is to be "...governed in all respects by the laws of the State of Pennsylvania, except for its rules with respect to conflict of laws...," the contract itself does not appear to contemplate the provision of any hospitality services in Pennsylvania. Rather, the specific race venues at which hospitality services were to be provided were Orlando, (FL) Phoenix, (AZ), Indianapolis, (IN), Fort Worth, (TX), Pikes Peak, (CO), Charlotte, (NC), New

---

1. Personal jurisdiction has been further defined as being either, specific or general in nature. "Specific" jurisdiction may be found where the plaintiff's cause of action arises out of a defendant's forum-related activities such that the defendant should reasonably anticipate being haled into court there. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Santana Products*, 14 F.Supp.2d at 713. "General" jurisdiction may be invoked when the plaintiff's cause of action arises from the defendant's non-forum related activities. To establish general jurisdiction, the plaintiff must show that the defendant has maintained continuous and systematic contacts with the forum. *Vetrotex*, 75 F.3d at 151, n. 3, *citing, inter alia, Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 9, & 416, 104 S.Ct. 1868, 1872 n. 9 & 1873, 80 L.Ed.2d 404 (1984) and *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 690, n. 2 (3rd Cir.1990).

Hampshire and Las Vegas (NV). Thus, we cannot conclude that the contract was either made or was to be performed in this state.

Indeed, the record further demonstrates that the only contacts which Special Events, Inc. had with Pennsylvania relative to this case occurred (1) when, in lieu of shipping it to Arizona, Plaintiff's president gave Nortel racing merchandise to two of Defendant's representatives in Pennsylvania for use in accordance with the parties' contract; and (2) while the parties' presidents were attending the Bosch Grand Prix in Nazareth, Pennsylvania, Mr. Harder pointed out to Mr. Whaling that there was an error in the mathematical calculation of the total compensation figure in the hospitality services contract which would need to be corrected. The page of the agreement which contained the error was later amended and re-signed by the parties' presidents in Indianapolis several weeks later. These contacts, we find, are insufficient to demonstrate that the plaintiff's cause of action arose out of the defendant's activities such that it should reasonably anticipate being brought into court here. We therefore conclude that this Court does not have specific jurisdiction over SEI.

■ We similarly find that the plaintiff has failed to meet its burden of showing that SEI has such general contacts with the Commonwealth of Pennsylvania that the exercise of general jurisdiction over it would be appropriate.[2] To be sure, in this regard, while the plaintiff's evidence does show that for the past five years, the defendant has provided hospitality services at the Bosch Grand Prix event in Nazareth, PA, it appears that these services are provided pursuant to a contract with Mercedes Benz and that it receives some $15,000 per year from Mercedes for this appearance which equates to 0.6% of Defendant's total annual gross sales. There is no evidence in the record concerning Mercedes Benz' corporate citizenship and there is further no evidence to refute the defendant's representations that it has no representatives or agents in Pennsylvania, does not own or lease any real property, does not have a telephone number, office, bank account or mailing address, and does not advertise in the Commonwealth of Pennsylvania. Inasmuch as the mere existence of a contract is not sufficient in and of itself to establish minimum contacts, we must conclude that general jurisdiction over this defendant is likewise lacking. See, e.g., Novacare, Inc. v. Strategic Theracare Alliance, et. al., 1999 WL 259848 at *7 (E.D.Pa.1999). Defendant's motion to dismiss shall therefore be granted in accordance with the attached order.

## ORDER

AND NOW, this 29th day of October, 1999, upon consideration of Defendant's Motion to Dismiss Plaintiff's Verified Complaint for Lack of Jurisdiction Over the Person and Improper Venue and Plaintiff's Response thereto, it is hereby ORDERED that the Motion is GRANTED and the case is DISMISSED for the reasons set forth in the preceding Memorandum Opinion.

---

**2.** The Third Circuit has held that a plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction; the nonresident's contacts to the forum must be both continuous and substantial. *Provident National Bank v. California Federal Savings & Loan Ass'n.*, 819 F.2d 434, 437 (3rd Cir.1987), *citing, inter alia, Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 541 (3rd Cir.1985) and *Dollar Savings Bank v. First Security Bank of Utah*, 746 F.2d 208, 212 (3rd Cir.1984).